FILED
SEPTEMBER 7, 2005
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| CARRIE WARFIELD, LAGINA WARFIELD individually and on behalf of her minor son, DESHAUN FOX, JENNIFER WARFIELD, MARY BONNER, and SHERPRINIA BONNER, on behalf of her minor daughter JALESSA BONNER,<br><br>    Plaintiffs,<br><br>    v.<br><br>CITY OF CHICAGO, CHICAGO POLICE OFFICER CALVIN CHAPMAN, CHICAGO POLICE OFFICER DWAYNE COLLIER, and UNKNOWN CHICAGO POLICE OFFICERS,<br><br>    Defendants. | 05 C 3712<br><br>JUDGE CASTILLO<br><br>JURY TRIAL DEMANDED |

05 C 3712

### NOTICE OF FILING

TO:

Diane Cohen
City of Chicago
Department of Law
30 North LaSalle Street
Suite 900
Chicago, Illinois 60602

Susan Sullivan
City of Chicago
Department of Law
30 North LaSalle Street
Suite 1400
Chicago, Illinois 60602

    Please take notice that on September 7, 2005, I filed the attached Second Amended Complaint with the Clerk of the United States District Court for the Northern District of Illinois.

                                                                                                              /s/

LOEVY & LOEVY
312 North May Street
Suite 100
Chicago, IL 60607
(312) 243-5900

## CERTIFICATE OF SERVICE

I, Russell Ainsworth, an attorney, certify that on September 7, 2005, I sent by U.S. Mail a copy of the attached Second Amended Complaint to the above-named counsel of record.

_[signature]_

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

CARRIE WARFIELD, LAGINA WARFIELD )
individually and on behalf of her minor )
son, DESHAUN FOX, JENNIFER WARFIELD, )
LATOYA POWELL, MARY BONNER, and )
SHERPRINIA BONNER, on behalf of her )
minor daughter JALESSA BONNER, )    05 C 3712
  )
    Plaintiffs, )    JUDGE CASTILLO
  )
v. )
  )
CITY OF CHICAGO, CHICAGO POLICE OFFICER )
CALVIN CHAPMAN, CHICAGO POLICE OFFICER )
DWAYNE COLLIER, and UNKNOWN CHICAGO )
POLICE OFFICERS, )
  )
    Defendants. )    JURY TRIAL DEMANDED

## SECOND AMENDED COMPLAINT

NOW COME Plaintiffs, CARRIE WARFIELD, LAGINA WARFIELD, individually and on behalf of her minor son, DESHAUN WARFIELD, JENNIFER WARFIELD, LATOYA POWELL, MARY BONNER, and SHERPRINIA BONNER, on behalf of her minor daughter JALESSA BONNER, by their attorneys, LOEVY & LOEVY, and complaining of Defendants, CITY OF CHICAGO, CHICAGO POLICE OFFICER CALVIN CHAPMAN, CHICAGO POLICE OFFICER DWAYNE COLLIER, and UNKNOWN CHICAGO POLICE OFFICERS (collectively, "Defendant Officers"), states as follows:

### Introduction

1. This action is brought pursuant to 42 U.S.C. Section 1983 to redress the deprivation under color of law of Plaintiffs' rights as secured by the United States Constitution.

## Jurisdiction and Venue

2.   This Court has jurisdiction of this action pursuant to 28 U.S.C. §§ 1331 and 1367.

3.   Venue is proper under 28 U.S.C. § 1391(b). On information and belief, all or most of the parties reside in this judicial district, and the events giving rise to the claims asserted herein all occurred within district.

4.   Plaintiffs are all residents of the City of Chicago. Lagina Warfield is employed by Great Lakes Naval Service and is the sister of Carrie Warfield. Her son, Deshaun, is nine years old. Jennifer Warfield (a cousin to Lagina and Carrie) recently graduated high school and is currently taking courses to become a certified nursing assistant. Jalessa Bonner is a student at Manley High School, and Mary Bonner (Jalessa's cousin) is a student at Austin High School.

## Factual Allegations

5.   The relevant events occurred on or about June 27, 2004. At that time, Plaintiffs Carrie Warfield, Jennifer Warfield, Latoya Powell, Mary Bonner, and Jalessa Bonner were walking to Ms. Warfield's home on the West side of Chicago.

6.   As they approached Ms. Warfield's home, the four women heard several gun shots close by.

7.   Terrified, the four Plaintiffs ran to Ms. Warfield's home and banged on the door, hoping that Plaintiff

2

Lagina Warfield would open the locked door from inside and provide refuge from the gunfire.

8. While, Carrie, Jennifer, Latoya, Mary and Jalessa tried to conceal themselves from the bullets in the doorway to the house, a man named Seneca Smith came running toward them. He was unarmed and bleeding from a gun shot wound to his leg.

9. Two gunmen, later identified as Defendant Officers Chapman and Collier, approached the group (which now included Carrie, Jennifer, Latoya, Mary, Jalessa, and Seneca all huddled in the doorway to the house) and proceeded to fire at Mr. Smith and Plaintiffs Carrie Warfield and Jalessa Bonner. Lagina Warfield, who were just inside the front door to the house, flattened herself and her son, Deshaun Fox, against the ground to avoid the gunfire.

10. Despite the fact that Plaintiffs and Mr. Smith were unarmed and posed no threat to the Defendant Officers, the Officers fired several bullets at them. Several of the bullets pierced the front of Plaintiffs Legina and Carrie Warfield's home.

11. Mr. Smith placed his body between the shooters and Plaintiffs, taking several bullets in the chest. But for Mr. Smith's heroics, it is almost certain that Plaintiffs Carrie Warfield, Lagina Warfield, Deshaun Fox, Jennifer Warfield, Latoya Powell, Mary Bonner, and Jalessa Bonner would have been shot. As

3

it was, another bullet fired by the Defendant Officers struck and wounded a thirteen year-old bystander (who was also inside the doorway to the house and also shielded from further injury by Mr. Smith).

12. The Defendant Officers continued to advance on Plaintiffs until Carrie Warfield cried out "my baby, you shot my baby" or words to that effect. Although Ms. Warfield did not have an infant with her, her ruse worked; the Officers immediately stopped firing and ran off.

13. Plaintiffs then carried Mr. Smith inside the house and began to tend to his wounds while Carrie (not knowing that the gunmen were police officers) called 911 for assistance.

14. Almost immediately thereafter, numerous Chicago police officers entered the house with guns drawn and corralled everyone present in the basement. The officers at the scene pointed their weapons at Plaintiffs and began demanding that Plaintiffs produce a gun, although the only weapons that Plaintiffs had seen during the incident were the guns used by the Defendant Officers in the attack.

15. The officers searched Plaintiffs one at a time. The female officer or officers who searched Jalessa Bonner and Jennifer Bonner invaded their privacy by placing her hand inside their brassieres in front of a number of persons present, including several male officers.

4

16. The officers then ordered Plaintiffs, as well as Lagina's then-eight year-old son Deshaun, to exit the house through the back door. Plaintiffs told the police they just wanted to go home, but the officers told them they had no choice but to go to a nearby police station for questioning.

17. At the police station, Plaintiffs were questioned repeatedly about what they observed during the shooting. Investigators accused them of lying about not having knowledge of a "gun" that police suspected was in their home.

18. At one point, Lagina Warfield and her son were locked in an interrogation room for over half an hour. Lagina had to beat on the door to be let out, pleading that her son had to use the bathroom.

19. Plaintiff Jennifer Warfield, who was pregnant at the time of the attack, explained to the investigators that she was pregnant and pleaded with them to let her use the bathroom. The Detectives refused at first, forcing Plaintiff Jennifer Warfield to urinate on herself.

20. At one point, Plaintiff Lagina Warfield told the Officers that she had to leave to get to her job at the Great Lakes Naval Station. The Officers told her that she was not free to leave and that they would contact her work and advise them that Ms. Warfield would not be available to come to work that day.

5

21.     Plaintiffs were not released until approximately 7 or 8 o'clock the next morning.  Upon returning to their home, Plaintiffs Carrie and Lagina Warfield discovered that their house was in shambles, having been literally ripped apart by police officers.  There were holes in the walls, the refrigerator was tipped over, two TVs were broken, curtains were torn, the stove was overturned, and several DVDs were missing.  Plaintiffs found their clean clothes ripped from their closets and covered in garbage.  No contraband was discovered in the search of their home.

22.     Jalessa Bonner was involuntarily brought to the station several additional times over the next week to be questioned about what she had observed.  At no time was Jalessa's mother present when she was being questioned, despite the fact that she was a minor.

### The Defendant Officers

23.     Unfortunately, this is not the first time that the Defendant Officers have had allegations of misconduct lodged against them.  On information and belief, the Defendant Officers have been accused of gross misconduct on previous occasions.

24.     Moreover, this is not the first time that these officers have been sued for their wrongdoing.  Nevertheless, on information and belief, the Defendant Officers have not been disciplined or terminated by the Chicago Police Department.

## Count I - 42 U.S.C. § 1983

### Unlawful Detention

25. Each of the Paragraphs in this Complaint is incorporated as if restated fully herein.

26. As described more fully above, the Defendant Officers caused Plaintiffs to be unlawfully and unreasonably detained without justification.

27. The misconduct described in this Count was undertaken with malice, willfulness, and reckless indifference to the rights of others.

28. As a result of the above-described wrongful infringement of his rights, Plaintiffs suffered damages, including but not limited to emotional distress and anguish.

29. The misconduct described in this Count was undertaken pursuant to the policy and practice of the Chicago Police Department in that:

    a. By failing to implement policies and procedures to corroborate the identity of persons arrested pursuant to a warrant, the City of Chicago directly encourages and is the moving force behind the misconduct alleged here;

    b. Further, by failing to adequately train, supervise and control its officers, the City directly encourages and is the moving force behind the unreasonable seizure at issue

7

here, such that the City's failure to do so manifests deliberate indifference;

   c.  Moreover, as a matter of both policy and practice, the Chicago Police Department facilitates the very type of misconduct at issue here by failing to adequately punish and discipline prior instances of similar misconduct, thereby leading Chicago Police Officers to believe their actions will never be scrutinized and, in that way, directly encouraging future abuses such as those affecting Plaintiff; specifically, Chicago Police Officers accused of constitutional violations can be confident that the Office of Professional Standards and/or the Internal Affairs Division will not investigate those accusations in earnest, and will refuse to recommend discipline even where the Officer has engaged in such activities;

   d.  Generally, as a matter of widespread practice so prevalent as to comprise municipal policy, officers of the Chicago Police Department abuse citizens in a manner similar to that alleged by Plaintiff in this Count on a frequent basis, yet the Chicago Police Department makes findings of wrongdoing in a disproportionately small number of cases;

   e.  Municipal policy-makers are aware of, and condone and facilitate by their inaction, a "code of silence" in the Chicago Police Department, by which officers fail to

report misconduct committed by other officers, such as the misconduct at issue in this case;

   f.   The City of Chicago has failed to act to remedy the patterns of abuse describe in the preceding sub-paragraphs, despite actual knowledge of the same, thereby causing the types of injuries alleged here;

   g.   As a matter of express policy, the City of Chicago does not retain or consider any records documenting allegations of civil rights violations against police officers which are more than five years old, thereby preventing the City from ascertaining any patterns of abuse which might develop over the course of a police officer's career;

   h.   As a matter of express policy, the City of Chicago refuses to take into consideration patterns of allegations of civil rights violations when evaluating the merits of any particular complaint, to wit, if a police officer is accused of the same sort of misconduct an inordinate number of times in row, O.P.S. and I.A.D. are forbidden by the City from considering this pattern of allegations if the allegations were deemed unsustained; and

   i.   By its own accounting, the City sustains less than 5% of the complaints brought against police officers for violations of civil rights.

9

30. The misconduct described in this Count was undertaken by the Defendant Officers within the scope of their employment and under color of law such that their employer, CITY OF CHICAGO, is liable for their actions.

### COUNT II - State Law Claim

### False Imprisonment

31. Each of the Paragraphs in this Complaint is incorporated as if restated fully herein.

32. Plaintiffs Carrie Warfield, Lagina Warfield, and Jalessa Bonner were arrested and detained despite the Defendant Officers' knowledge that there was no lawful justification for doing so.

33. In the manner described more fully above, the Defendant Officers unlawfully and unreasonably imprisoned Plaintiffs Carrie Warfield, Lagina Warfield, and Jalessa Bonner without justification.

34. As a result of this misconduct, Plaintiffs Carrie Warfield, Lagina Warfield, and Jalessa Bonner have suffered and continue to suffer damages, including but not limited to emotional distress.

35. The Defendant Officers' actions set forth above were undertaken intentionally, with malice and reckless indifference to Plaintiffs Carrie Warfield, Lagina Warfield, and Jalessa Bonner's rights.

36. The misconduct described in this Count was undertaken by the Defendant Officers within the scope of their employment such that their employer, CITY OF CHICAGO, is liable for their actions.

### Count III -- 42 U.S.C. § 1983

### Excessive Force

37. Each of the Paragraphs in this Complaint is incorporated as if restated fully herein.

38. As described in the preceding paragraphs, the conduct of the Defendant Officers toward Plaintiffs constituted excessive force in violation of the United States Constitution.

39. The misconduct described in this Count was objectively unreasonable and was undertaken intentionally with wilful indifference to Plaintiffs' constitutional rights.

40. The misconduct described in this Count was undertaken with malice, willfulness, and reckless indifference to the rights of others.

41. The misconduct described in this Count was undertaken pursuant to the policy and practice of the Chicago Police Department in the manner described in preceding paragraphs.

42. As a result of the unjustified and excessive use of force by the Defendant Officers, as well as the City's policy and practice, Plaintiffs have suffered emotional distress.

43. The misconduct described in this Count was undertaken by the Defendant Officers within the scope of their employment and under color of law such that their employer, CITY OF CHICAGO, is liable for their actions.

### COUNT IV -- State Law Claim

### Intentional Infliction of Emotional Distress

44. Each of the Paragraphs in this Complaint is incorporated as if restated fully herein.

45. As described more fully in the preceding paragraphs, by firing their weapons at Plaintiffs Carrie Warfield, Lagina Warfield, and Jalessa Bonner with reckless disregard for the consequences of their actions, Defendant Officers Chapman and Collier engaged in extreme and outrageous conduct.

46. The misconduct described in this Count was rooted in an abuse of power or authority.

47. The misconduct described in this Count was undertaken with intent or knowledge that there was a high probability that the conduct would inflict severe emotional distress and with reckless disregard of that probability.

48. The misconduct described in this Count was undertaken with malice, willfulness, and reckless indifference to the rights of others.

49. As a proximate result of this misconduct, Plaintiffs Carrie Warfield, Lagina Warfield, and Jalessa Bonner suffered emotional distress and anguish.

50. The misconduct described in this Count was undertaken by Defendant Officers Chapman and Collier within the scope of their employment such that their employer, CITY OF CHICAGO, is liable for their actions.

### Count V -- Section 1983

### Fourth Amendment

51. Each of the Paragraphs in this Complaint is incorporated as if restated fully herein.

52. As described more fully above, the Defendant Officers, acting under color of law and within the scope of their employment as Chicago Police Officers, improperly exceeded the scope of their lawful authority in conducting an unreasonable search of Plaintiffs Carrie and Lagina Warfield's residence, thereby violating the United States Constitution.

53. Furthermore, by placing her hand inside Plaintiff Jalessa Bonner's brassiere without lawful justification in full view of everyone else present, one of the Defendant Officers conducted an unreasonable search of Ms. Bonner.

54. The misconduct described in this Count was undertaken with malice, willfulness, and reckless indifference to the rights of others.

55. As a result of the above-described wrongful infringement of Plaintiffs Carrie Warfield, Lagina Warfield, and Jalessa Bonner's rights, Plaintiffs Carrie Warfield, Lagina Warfield, and Jalessa Bonner suffered damages, including but not limited to mental distress and anguish.

56. The misconduct described in this Count was undertaken by the Defendant Officers within the scope of their employment and under color of law such that their employer, CITY OF CHICAGO, is liable for their actions.

### Count VI -- State Law Claim

### Tort of Intrusion

57. Each of the Paragraphs in this Complaint is incorporated as if restated fully herein.

58. As described more fully above, by unreasonably and without justification firing their weapons into Plaintiffs Lagina and Carrie Warfield's home, Defendants Chapman and Collier's actions constituted an unauthorized intrusion into Plaintiffs' seclusion.

59. This intrusion was highly offensive to a reasonable person and was an intrusion into Plaintiffs' private matters.

60. As a result of the Defendants' intrusion into their privacy, the Plaintiffs suffered anguish and suffering.

61. The misconduct described in this Count was undertaken by Defendant Officers Chapman and Collier within the scope of their employment such that their employer, CITY OF CHICAGO, is liable for their actions.

### COUNT VI -- State Law Claim

### Respondeat Superior

62. Each of the Paragraphs in this Complaint is incorporated as if restated fully herein.

63. In committing the acts alleged in the preceding paragraphs, the Defendant Officers were members of, and agents of, the Chicago Police Department acting at all relevant times within the scope of their employment.

64. Defendant CITY OF CHICAGO is liable as principal for all torts committed by its agents.

### COUNT VII -- State Law Claim

### Indemnification

65. Each of the Paragraphs in this Complaint is incorporated as if restated fully herein.

66. Illinois law provides that public entities are directed to pay any tort judgment for compensatory damages for which employees are liable within the scope of their employment activities.

67. The Defendant Officers are or were employees of

15

the Chicago Police Department, who acted within the scope of their employment in committing the misconduct described herein.

WHEREFORE, Plaintiffs, CARRIE WARFIELD, LAGINA WARFIELD, individually and on behalf of her minor son, DESHAUN WARFIELD, JENNIFER WARFIELD, LATOYA POWELL, MARY BONNER, and SHERPRINIA BONNER, on behalf of her minor daughter JALESSA BONNER, respectfully request that this Court enter judgment in their favor and against Defendants, CITY OF CHICAGO, CHICAGO POLICE OFFICER CALVIN CHAPMAN, CHICAGO POLICE OFFICER DWAYNE COLLIER, and UNKNOWN CHICAGO POLICE OFFICERS, awarding compensatory damages and attorneys' fees, as well as punitive damages against the Defendant Officers in their individual capacities, and any other relief this Court deems just and appropriate.

### JURY DEMAND

Plaintiffs CARRIE WARFIELD, LAGINA WARFIELD, individually and on behalf of her minor son, DESHAUN WARFIELD, JENNIFER WARFIELD, LATOYA POWELL, MARY BONNER, and SHERPRINIA BONNER, on behalf of her minor daughter JALESSA BONNER, hereby demand a trial by jury pursuant to Federal Rule of Civil Procedure 38(b) on all issues so triable.

RESPECTFULLY SUBMITTED,

_____
Attorneys for Plaintiffs

Arthur Loevy
Jon Loevy
Michael Kanovitz
Russell Ainsworth
LOEVY & LOEVY
312 North May
Suite 100
Chicago, IL 60607
(312) 243-5900

17