UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CARRIE WARFIELD, LAGINA WARFIELD, individually and on behalf of her minor son, DESHAUN FOX, JENNIFER WARFIELD, LATOYA POWELL, MARY BONNER, and SHERPRINIA BONNER, on behalf of her minor daughter JALESSA BONNER,<br><br>Plaintiffs,<br><br>v.<br><br>CITY OF CHICAGO, et al.,<br><br>Defendants. | No. 05 C 3712<br><br>Judge Castillo<br><br>Magistrate Judge Cole<br>Jury Demand |

**DEFENDANT CITY OF CHICAGO'S SECOND REVISED RESPONSES TO PLAINTIFFS' FIRST SET OF REQUESTS TO ADMIT TO DEFENDANT CITY OF CHICAGO**

Defendant, City of Chicago ("City"), by Mara S. Georges, Corporation Counsel for the City of Chicago for its Revised Responses to Plaintiffs' First Set of Requests to Admit to Defendant City of Chicago, states as follows:

1. The City of Chicago is obliged to indemnify the Responding Officers for any award of compensatory damages against the Officers resulting from the Officers' conduct toward Plaintiff as described in the complaint.

**RESPONSE:**

Defendant City admits that is obligated to indemnify in accordance with the confines of applicable law, see Section 9-102 of the <u>Illinois Local Government and Governmental Tort Immunity Act</u>, 745 ILCS 10/9-102, and denies the remainder of Request to Admit 1.

1



2. The City of Chicago is obliged, to indemnify the Responding Officers for any award of attorneys' fees against the Officers resulting from the Officers' conduct toward Plaintiff as described in the complaint.

**RESPONSE:**

**Defendant City admits that is obligated to indemnify in accordance with the confines of applicable law, see Section 9-102 of the Illinois Local Government and Governmental Tort Immunity Act, 745 ILCS 10/9-102, and denies the remainder of Request to Admit 2.**

3. The Responding Officers acted in a manner consistent with all of the policies and practices of the City of Chicago and the Department at all times during their interaction with Plaintiff on the date of the events described in the complaint.

**RESPONSE:**

**The City objects to this Request because it is vague to the point that it is impossible to answer: the City and its police department have detailed policies and procedures that govern the myriad activities that the City and its Police Department undertake, and plaintiffs' failure to specify in any way what practices or procedures they are inquiring about renders this request hopelessly vague and grossly overly broad. Additionally, plaintiffs failed to identify any of the "responding officers" to whom they are referring in this Request, so the City is unable to respond to the Request in this regard as well. The City objects to the phrase "all the policies and practices of the City of Chicago and Department" and "responding officers" in that they are improper under Rule 36 and do not sufficiently identify or set forth each matter to allow the City to provide a fully accurate answer or even to make a reasonable inquiry, as required by Rule 36.**

4. Plaintiffs Carrie Warfield, Jennifer Warfield, Latoya Powell Mary Bonner, and Jalessa Bonner were in the vestibule to the building located at 5331W. Congress, Chicago, Illinois, on the evening of June 27, 2004.

**RESPONSE:**

**The City is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations because plaintiffs allege one thing and other witnesses allege another thing and the City has no meaningful way at this stage of the litigation and without the benefit of discovery, to corroborate these allegations or make a meaningful inquiry, as required by Rule 36. Accordingly, the City is unable to admit or deny the substance of plaintiffs' allegations.**

5. Plaintiffs Carrie Warfield, Jennifer Warfield, Latoya Powell, Mary Bonner, and Jalessa Bonner were in the vestibule to the building located at 5331 W. Congress, Chicago, Illinois, on the evening of June 27, 2004 when two Chicago police officers were shooting at Seneca Smith.

**RESPONSE:**

**The City admits that a witness reported to the Chicago Police Department that on June 27, 2004, she saw Smith running toward her and others with a gun in his hand and that she and others entered the vestibule at 5331 W. Congress Parkway and went to the basement apartment. The City further admits that Officers Collier and Chatman fired their weapons at Smith, at different times, in self-defense. However, as to the remaining allegations in Request to Admit 5, the City is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations because plaintiffs allege one thing and other witnesses allege another thing and the City has no meaningful way at this stage of the litigation and without the benefit of discovery, to corroborate these allegations or**

make a meaningful inquiry, as required by Rule 36.

6. Plaintiffs Carrie Warfield, Jennifer Warfield, Latoya Powell, Mary Bonner, and Jalessa Bonner were in the vestibule to the building located at 5331 W. Congress, Chicago, Illinois, on the evening of June 27, 2004 when Defendant Officers Chatman and Collier were shooting at Seneca Smith.

**RESPONSE:**

**The City admits that a witness reported to the Chicago Police Department that on June 27, 2004, she saw Smith running toward her and others with a gun in his hand and that she and others entered the vestibule at 5331 W. Congress Parkway and went to the basement apartment. The City further admits that Officers Collier and Chatman fired their weapon at Smith, at different times, in self-defense. However, as to the remaining allegations in Request to Admit 6, the City is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations because plaintiff alleges one thing and other witness allege another thing and the City has no meaningful way at this stage of the litigation and without the benefit of discovery, to corroborate these allegations or make a meaningful inquiry, as required by Rule 36.**

7. Defendant Officers Chatman and Collier fired their weapons on June 27, 2004.

**RESPONSE:**

**The City admits that Officer Chatman and Officer Collier fired their weapons on June 27, 2004.**

8. Defendant Officers Chatman and Collier fired their weapons at Seneca Smith on June 27, 2004.

**RESPONSE:**

**The City admits that Officers Chatman and Collier fired their weapons at Seneca**

4

Smith on June 27, 2004, at different times, in self-defense and after Smith attempted to murder Officers Collier and Chatman.

9. No firearm was recovered inside the building located at 5331 W. Congress, Chicago, Illinois on June 27, 2004 or June 28, 2004.

RESPONSE:

**The City admits that based on Chicago Police Department records to date, no firearm was recovered by the CPD inside the building located at 5331 W. Congress, Chicago, Illinois, on June 27, 2004 or June 28, 2004.**

10. No contraband was recovered inside the building located at 5331 W. Congress, Chicago, Illinois on June 27, 2004 or June 28, 2004.

RESPONSE:

**The City objects to the term "contraband" in that it is improper under Rule 36 and does not sufficiently identify or define the request in order to allow the City to provide a fully accurate answer or even to make a reasonable inquiry, as required by Rule 36.**

11. Seneca Smith was shot multiple times by Chicago police officers on June 27, 2004.

RESPONSE:

**Defendant City admits that on June 27, 2004, Smith attempted to murder Officers Collier and Chatman and in response, Officers Chatman and Collier, at different times, and in self-defense, fired their weapons at Smith. Defendant City further admits that according to Chicago Police Department records, Officer Collier fired his weapon five times and that Officer Chatman fired his weapon two times. The City objects to the use of the words "multiple times" as it does not define or identify what plaintiffs mean by that**

5

term.

12. Seneca Smith was shot by Defendant Officer Chatman, on June 27, 2004.

**RESPONSE:**

Defendant City admits that on June 27, 2004, Smith attempted to murder Officers Collier and Chatman and in response and in self-defense, was shot at and possibly struck by a bullet from Officer Chatman's weapon.

13. Seneca Smith was shot by Defendant Officer Collier on June 27, 2004.

**RESPONSE:**

The City admits that Officer Collier fired his weapon at Seneca Smith on June 27, 2004, in self defense. The City admits that based on Chicago Police Department records, Smith was shot between one and two times. As to the remainder of Request to Admit 13, at this stage in the litigation, the City has no meaningful way to corroborate these allegations or make a meaningful inquiry, as required by Rule 36.

14. No firearm was recovered within 10 yards of the vestibule to the building located at 5331 W. Congress, Chicago, Illinois following the shooting described in Plaintiffs' complaint on June 27, 2004.

**RESPONSE:**

The City admits that a weapon carried and used by Seneca Smith was recovered at 5318 W. Congress but has no information regarding the distance in terms of yards, from were the gun was recovered to the building located at 5331 W. Congress. Further, the City objects to this Request based on Rule 36. The City denies the allegations described in plaintiffs' complaint.

6

15. No firearm was recovered within 10 yards of the vestibule to the building located at 5331 W. Congress, Chicago, Illinois following the shooting described in Plaintiffs' complaint on June 27, 2004.

**RESPONSE:**

**The City admits that a weapon used by Seneca Smith was recovered at 5318 W. Congress but has no information regarding the distance in terms of yards from, were the gun was recovered to the building located at 5331 W. Congress. Further, the City objects to this Request based on Rule 36. The City denies the allegations described in plaintiffs' complaint.**

16. No firearm was recovered within 15 yards of the vestibule to the building located at 5331 W. Congress, Chicago, Illinois following the shooting described in Plaintiffs' complaint on June 27, 2004.

**RESPONSE:**

**The City admits that a weapon used by Seneca Smith was recovered at 5318 W. Congress but has no information regarding the distance in terms of yards, from were the gun was recovered to the building located at 5331 W. Congress. Further, the City objects to this Request based on Rule 36. The City denies the allegations described in plaintiffs' complaint.**

17. No firearm was recovered within 20 yards of the vestibule to the building located at 5331 W. Congress, Chicago, Illinois following the shooting described in Plaintiffs' complaint on June 27, 2004.

**RESPONSE:**

**The City admits that a weapon used by Seneca Smith was recovered at 5318 W. Congress but has no information regarding the distance in terms of yards, from were the gun was recovered to the building located at 5331 W. Congress. Further, the City objects**

to this Request based on Rule 36. The City denies the allegations described in plaintiffs' complaint.

18. One or more Responding Officers performed a pat down search of Plaintiff Carrie Warfield on June 27, 2004.

**RESPONSE:**

**The City admits that female officers were called to the basement apartment 5331 W. Congress on June 27, 2004, in order to perform pat down searches of females in the basement, including Carrie Warfield who lived there and was in the basement at the time. The City, after reasonable inquiry as required by Rule 36, has insufficient information at this time to either admit or deny the remainder of the request.**

19. One or more Responding Officers performed a pat down search of Plaintiff Jennifer Warfield on June 27, 2004.

**RESPONSE:**

**The City admits that female officers were called to the basement apartment 5331 W. Congress on June 27, 2004, in order to perform pat down searches of females in the basement, including Jennifer Warfield who was in the basement at the time. The City, after reasonable inquiry as required by Rule 36, has insufficient information at this time to either admit or deny the remainder of the request.**

20. One or more Responding Officers performed a pat down search of Plaintiff Lagina Warfield on June 27, 2004.

**RESPONSE:**

**The City admits that female officers were called to the basement apartment 5331 W. Congress on June 27, 2004, in order to perform pat down searches of females in the**

basement, including Lagina Warfield who lived there and was in the basement at the time. The City, after reasonable inquiry as required by Rule 36, has insufficient information at this time to either admit or deny the remainder of the request.

21. One or more Responding Officers performed a pat down search of Plaintiff Latoya Powell on June 27, 2004.

**RESPONSE:**

The City admits that female officers were called to the basement apartment 5331 W. Congress on June 27, 2004, in order to perform pat down searches of females in the basement, including Latoya Powell who was in the basement at the time. The City, after reasonable inquiry as required by Rule 36, has insufficient information at this time to either admit or deny the remainder of the request.

22. One or more Responding Officers performed a pat down search of Plaintiff Mary Bonner on June 27, 2004.

**RESPONSE:**

The City admits that female officers were called to the basement apartment 5331 W. Congress on June 27, 2004, in order to perform pat down searches of females in the basement, including Mary Bonner who was in the basement at the time. The City, after reasonable inquiry as required by Rule 36, has insufficient information at this time to either admit or deny the remainder of the request.

23. One or more Responding Officers performed a pat down, search of Plaintiff Jalessa Bonner on June 27, 2004.

**RESPONSE:**

The City admits that female officers were called to the basement apartment 5331 W.

**Congress on June 27, 2004, in order to perform pat down searches of females in the basement, including Jaleesa Bonner who was in the basement at the time. The City, after reasonable inquiry as required by Rule 36, has insufficient information at this time to either admit or deny the remainder of the request.**

    24.    One or more Responding Officers detained Plaintiff Carrie Warfield at the police station against her will on June 27, 2004 or June 28, 2004.

**RESPONSE:**

Deny.

    25.    One or more Responding Officers detained Plaintiff Jennifer Warfield at the police station against her will on June 27, 2004 or June 28, 2004.

**RESPONSE:**

Deny.

    26.    One or more Responding Officers detained Plaintiff Lagina Warfield at the police station against her will on June 27, 2004 or June 28, 2004.

**RESPONSE:**

Deny.

    27.    One or more Responding Officers detained Plaintiff Deshaun Foster at the police station against his will on June 27, 2004 or June 28, 2004.

**RESPONSE:**

Deny.

    28.    One or more Responding Officers detained Plaintiff Latoya Powell at the police station against her will on June 27, 2004 or June 28, 2004.

**RESPONSE:**

Deny.

29. One or more Responding Officers detained Plaintiff Mary Bonner at the police station against her will on June 27, 2004 or June 28, 2004.

**RESPONSE:**

**Deny.**

30. One or more Responding Officers detained Plaintiff Jalessa Bonner at the police station against her will on June 27, 2004 or June 28, 2004.

**RESPONSE:**

**Deny.**

31. One or more Responding Officers questioned Jalessa Bonner without her parent or guardian present on June 27, 2004 or June 28, 2004.

**RESPONSE:**

**Admit.**

32. One or more of the Responding Officers' conduct toward Plaintiff during the events described in the complaint violated Plaintiff's constitutional rights.

**RESPONSE:**

**Deny.**

33. Plaintiffs did not commit any criminal conduct during the events described in the complaint.

**RESPONSE:**

**The City is without knowledge or information sufficient to form a belief as to the truth or falsity of plaintiffs' allegations because plaintiffs' request is so broad and the City, after reasonable inquiry as required by Rule 36, has insufficient information at this time to either admit or deny the request.**

34. There was no probable cause to believe that Plaintiff Carrie Warfield had committed or was committing a crime when she was transported to the Chicago police station on

11

June 27, 2004.

**RESPONSE:**

**Admit.**

35. There was no probable cause to believe that Plaintiff Jennifer Warfield had committed or was committing a crime when she was transported to the Chicago police station on June 27, 2004.

**RESPONSE:**

**Admit.**

36. There was no probable cause to believe that Plaintiff Lagina Warfield had committed or was committing a crime when she was transported to the Chicago police station on June 27, 2004.

**RESPONSE:**

**Admit.**

37. There was no probable cause to believe that Plaintiff Deshaun Foster had committed or was committing a crime when he was transported to the Chicago police station on June 27, 2004.

**RESPONSE:**

**Admit.**

38. There was no probable cause to believe that Plaintiff Mary Bonner had committed or was committing a crime when she was transported to the Chicago police station on June 27, 2004.

**RESPONSE:**

**Admit.**

39. There was no probable cause to believe that Plaintiff Jalessa Bonner had committed or was committing a crime when she was transported to the Chicago police station on June 27, 2004.

**RESPONSE:**

12

Admit.

40. The Responding Officers who questioned Plaintiff Carrie Warfield did not violate any of the practices or procedures of the Department or the Defendant City in, doing so.

**RESPONSE:**

The City objects to this Request because it is vague to the point that it is impossible to answer: the City and its police department have detailed policies and procedures that govern the myriad activities that the City and its Police Department undertake, and plaintiffs' failure to specify in any way what practices or procedures they are inquiring about renders this request hopelessly vague and grossly overly broad. The City further objects to this request because the phrases "any of the practices or procedures of the Department or Defendant City" and "responding officers" because they are ambiguous and overly broad and involves all policies and practices of the City of Chicago as well as the Chicago Police Department and numerous responding officers. The City further objects to the phrase "any of the practices or procedures of the Department or Defendant City" in that it is improper under Rule 36 and does not sufficiently identify or set forth each matter to allow the City to provide a fully accurate answer or even to make a reasonable inquiry, as required by Rule 36. Without waiving these objections, the City denies that Warfield's constitutional rights were violated when she was questioned.

41. The Responding Officers who questioned Plaintiff Jennifer Warfield did not violate any of the practices or procedures of the Department or the Defendant City in doing so.

**RESPONSE:**

The City objects to this Request because it is vague to the point that it is impossible to answer: the City and its police department have detailed policies and procedures that

govern the myriad of activities that the City and its Police Department undertake, and plaintiffs' failure to specify in any way what practices or procedures they are inquiring about renders this request hopelessly vague and grossly overly broad. The City further objects to this request because the phrases "any of the practices or procedures of the Department or Defendant City" and "responding officers" because they are ambiguous and overly broad and involves all policies and practices of the City of Chicago as well as the Chicago Police Department and numerous responding officers. The City further objects to the phrase "any of the practices or procedures of the Department or Defendant City" in that it is improper under Rule 36 and does not sufficiently identify or set forth each matter to allow the City to provide a fully accurate answer or even to make a reasonable inquiry, as required by Rule 36. Without waiving these objections, the City denies that Jennifer Warfield's constitutional rights were violated when she was questioned.

42. The Responding Officers who questioned Plaintiff Lagina Warfield did not violate any of the practices or procedures of the Department or the Defendant City in doing so.

**RESPONSE:**

The City objects to this Request because it is vague to the point that it is impossible to answer: the City and its police department have detailed policies and procedures that govern the myriad of activities that the City and its Police Department undertake, and plaintiffs' failure to specify in any way what practices or procedures they are inquiring about renders this request hopelessly vague and grossly overly broad. The City further objects to this request because the phrases "any of the practices or procedures of the

14

Department or Defendant City" and "responding officers" because they are ambiguous and overly broad and involves all policies and practices of the City of Chicago as well as the Chicago Police Department and numerous responding officers. The City objects to the phrase "any of the practices or procedures of the Department or Defendant City" in that it is improper under Rule 36 and does not sufficiently identify or set forth each matter to allow the City to provide a fully accurate answer or even to make a reasonable inquiry, as required by Rule 36. Without waiving these objections, the City denies that it violated the constitutional rights of Lagina Warfield.

43. The Responding Officers who questioned Plaintiff Deshaun Foster did not violate any of the practices or procedures of the Department or the Defendant City in doing so.

**RESPONSE:**

The City objects to this Request because it is vague to the point that it is impossible to answer: the City and its police department have detailed policies and procedures that govern the myriad of activities that the City and its Police Department undertake, and plaintiffs' failure to specify in any way what practices or procedures they are inquiring about renders this request hopelessly vague and grossly overly broad. The City further objects to this request because the phrases "any of the practices or procedures of the Department or Defendant City" and "responding officers" because they are ambiguous and overly broad and involves all policies and practices of the City of Chicago as well as the Chicago Police Department and numerous responding officers. The City objects to the phrase "any of the practices or procedures of the Department or Defendant City" in that it is improper under Rule 36 and does not sufficiently identify or set forth each matter to

allow the City to provide a fully accurate answer or even to make a reasonable inquiry, as required by Rule 36. Without waiving these objections, the City denies that Deshaun Foster was questioned and denies that it violated his constitutional rights.

44. The Responding Officers who questioned Plaintiff Latoya Powell did not violate any of the practices or procedures of the Department or the Defendant City in doing so.

**RESPONSE:**

The City objects to this Request because it is vague to the point that it is impossible to answer: the City and its police department have detailed policies and procedures that govern the myriad of activities that the City and its Police Department undertake, and plaintiffs' failure to specify in any way what practices or procedures they are inquiring about renders this request hopelessly vague and grossly overly broad. The City further objects to this request because the phrases "any of the practices or procedures of the Department or Defendant City" and "responding officers" because they are ambiguous and overly broad and involves all policies and practices of the City of Chicago as well as the Chicago Police Department and numerous responding officers. The City objects to the phrase "any of the practices or procedures of the Department or Defendant City" in that it is improper under Rule 36 and does not sufficiently identify or set forth each matter to allow the City to provide a fully accurate answer or even to make a reasonable inquiry, as required by Rule 36. Without waiving these objections, the City denies that it violated the constitutional rights of Latoya Powell.

45. The Responding Officers who questioned Plaintiff Mary Bonner did not violate any of the practices or procedures of the Department or the Defendant City in doing so.

**RESPONSE:**

**The City objects to this Request because it is vague to the point that it is impossible to answer: the City and its police department have detailed policies and procedures that govern the myriad of activities that the City and its Police Department undertake, and plaintiffs' failure to specify in any way what practices or procedures they are inquiring about renders this request hopelessly vague and grossly overly broad. The City further objects to this request because the phrases "any of the practices or procedures of the Department or Defendant City" and "responding officers" because they are ambiguous and overly broad and involves all policies and practices of the City of Chicago as well as the Chicago Police Department and numerous responding officers. The City objects to the phrase "any of the practices or procedures of the Department or Defendant City" in that it is improper under Rule 36 and does not sufficiently identify or set forth each matter to allow the City to provide a fully accurate answer or even to make a reasonable inquiry, as required by Rule 36. Without waiving these objections, the City denies that it violated the constitutional rights of Mary Bonner.**

46.  The Responding Officers who questioned Plaintiff Jalessa Bonner did not violate any of the practices or procedures of the Department or the Defendant City in doing so.

RESPONSE:

The City objects to this Request because it is vague to the point that it is impossible to answer: the City and its police department have detailed policies and procedures that govern the myriad of activities that the City and its Police Department undertake, and plaintiffs' failure to specify in any way what practices or procedures they are inquiring about renders this request hopelessly vague and grossly overly broad. The City further

17

objects to this request because the phrases "any of the practices or procedures of the Department or Defendant City" and "responding officers" because they are ambiguous and overly broad and involves all policies and practices of the City of Chicago as well as the Chicago Police Department and numerous responding officers. The City objects to the phrase "any of the practices or procedures of the Department or Defendant City" in that it is improper under Rule 36 and does not sufficiently identify or set forth each matter to allow the City to provide a fully accurate answer or even to make a reasonable inquiry, as required by Rule 36. Without waiving these objections, the City denies that it violated the constitutional rights of Jalessa Bonner.

47. One or more of the Plaintiffs was locked in a room at the Chicago police station on the night of June 27-28, 2004.

RESPONSE:

Deny.

48. It was consistent with the practice of the Chicago police department to lock one or more of the Plaintiffs in a room at the Chicago police station on the night of June 27-28, 2004.

RESPONSE:

The City objects to this Request because it is vague to the point that it is impossible to answer: the City and its police department have detailed policies and procedures that govern the myriad of activities that the City and its Police Department undertake, and plaintiffs' failure to specify in any way what practice they are inquiring about renders this request hopelessly vague and grossly overly broad. The City objects to the phrase "any of the practice of the Chicago Police Department" in that it is improper under Rule 36 and does not sufficiently identify or set forth each matter to allow the City to provide a fully

18

accurate answer or even to make a reasonable inquiry, as required by Rule 36. Without waiving these objections, the City denies that it violated the constitutional rights of plaintiffs on June 27 or 28, 2004 or any other day.

49. It was consistent with the policy of the Chicago police department to lock one or more of the Plaintiffs in a room at the Chicago police station on the night of June 27-28, 2004.

**RESPONSE:**

The City objects to this Request because it is vague to the point that it is impossible to answer: the City and its police department have detailed policies and procedures that govern the myriad of activities that the City and its Police Department undertake, and plaintiffs' failure to specify in any way what policies it is inquiring about renders this request hopelessly vague and grossly overly broad. The City objects to the phrase "policy of the Chicago police department" in that it is improper under Rule 36 and does not sufficiently identify or set forth each matter to allow the City to provide a fully accurate answer or even to make a reasonable inquiry, as required by Rule 36. Without waiving these objections, the City denies that it violated the constitutional rights of plaintiffs on June 27 or 28, 2004.

**DATED: APRIL 28, 2006**

          Respectfully submitted,

          MARA S. GEORGES
          Corporation Counsel
          for the City of Chicago

By: _____
          DIANE S. COHEN
          Assistant Corporation Counsel

30 N. LaSalle, Suite 900
Chicago, Illinois 60602
(312) 744-2836

## CERTIFICATE OF SERVICE

I, Diane S. Cohen, an attorney, certify that I have caused true and correct copies of Defendant City's Second Revised Objections and Responses to Plaintiffs' Requests to Admit, to be served via regular mail delivery on April 28, 2006:

Russell Ainsworth
LOEVY & LOEVY
312 North May Street
Suite 100
Chicago, Illinois 60607

and

Eileen Rosen
Assistant Corporation Counsel
30 N. LaSalle, Ste. 1400
Chicago, IL 60602
(Via interoffice mail)

_____
DIANE S. COHEN
Assistant Corporation Counsel