**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| CARRIE WARFIELD, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. 05 C 3712 |
| | ) | |
| CITY OF CHICAGO, et al., | ) | Judge Castillo |
| | ) | |
| Defendants. | ) | Magistrate Judge Cole |

**PLAINTIFFS RESPONSE TO
DEFENDANTS RULE 59 MOTION FOR A NEW TRIAL**

Plaintiffs by their attorneys, LOEVY & LOEVY, and hereby respond to Defendants Rule 59 Motion for a New Trial as follows.

**I. The Courts *Batson* Ruling Was Correct, But This Court May Choose to Oblige Defendants By Clarifying Its Explicit Finding that the Reason Proffered By the Defendants Was Pretextual**

Pursuant to this Courts direction, Plaintiffs will not brief the merits of Defendants challenge to the *Batson* ruling, which the Court has previously addressed. Plaintiffs obviously agree with the Courts ruling, which was correct. Nevertheless, the thrust of Defendants argument is that the Court supposedly erred because it did not explicitly use the word pretext when rejecting Defendants proffered race-neutral explanation and concluding that the Defendants peremptory challenge evinced a discriminatory intent. Def. Mot. at 4.

Although the Courts ruling was proper, Defendants nevertheless moved to reconsider that decision, renewed their challenge in their post-trial motion, and undoubtedly will renew this argument on appeal. Should this Court desire to conserve the judicial resources that would otherwise be required to comb through the record on appeal in the event of a remand, this Court could oblige Defendants and affirmatively state that the *Batson* challenge was sustained because

the explanation proffered by the Defendants was pretextual and evinced a discriminatory intent. *See, e.g., United States v. McMath*, 559 F.3d 657, 666 (7th Cir. 2009) (remanding for district court to make additional findings regarding its denial of *Batson* challenge); *United States v. Taylor*, 509 F.3d 839, 845-46 (7th Cir. 2007) (retaining jurisdiction but remanding for the district court to supplement the record with factual findings); *United States v. Taylor*, 277 Fed.Appx. 610, 612-13 (7th Cir. 2008) (*Taylor II* ) (concluding that the district court made insufficient factual findings after *Taylor I* and remanding again for an evidentiary hearing to develop the record).

**II.    The Court Properly Denied Defendants Motion to Strike Juror No. 13 For Cause**

The decision whether to excuse a juror for cause is left to the Courts discretion, given the Courts unique ability to evaluate the jurors ability to serve. *United States v. Polichemi*, 201 F.3d 858 (7th Cir. 2000).

Defendants accuse this Court of denying them a fair trial on the basis that it granted Plaintiffs motion to strike juror no. 45 but denied the defense motion to strike juror no. 13. That argument is misleading, to put it mildly. Juror No. 45, as the Court recognized, was second to last of the pool of potential jurors and had no legitimate possibility of being empaneled given the number of jurors in line before her and the fact that the parties had only six preemptories between them. R. 92. Rather than waste time exploring the relationship between juror no. 45 and her sister (who worked in the same litigation division as trial counsel for the defendants), the Court struck juror no. 45 in its discretion. R. 92-93.

The Court resolved Plaintiffs motion to strike juror no. 8 in the same way as it treated the Defendants motion. Despite the fact that juror no. 8 stated that he was concerned that jury verdicts were excessive, the Court denied Plaintiffs motion to strike for cause because, like juror no. 13, juror no. 8 stated that he could be fair and impartial. R. 40-41, 89. Both juror nos. 8 and 13 were in the final pool of 14 jurors from which the jury would be selected. The Court did not abuse its discretion in denying Defendants motion to strike juror no. 13.

**III.   The Court Did Not Err in Instructing the Jury**

There is a two-part inquiry in response to a challenge jury instructions: first, whether the jury instructions adequately stated Seventh Circuit law; if the answer is no, then whether the error prejudiced one of the parties because the jury was likely confused or misled. *See Otto v. Variable Annuity Life Ins. Co.*, 134 F. 3d 841, 847 (7th Cir. 1998).  No perfect set of jury instructions is required, as long as they are correct legal statements.  *Lasley v. Moss*, 500 F.3d 586, 589 (7th Cir. 2007).  Reversal is only justified if the instruction misguides the jury so much that a litigant is prejudiced.  *Id.*   When determining if the instructions were legally sound, any challenged instruction must be considered in their entirety rather than in isolation, to determine if the instructions as a whole were sufficient to inform the jury of the applicable law. *DePaepe v. General Motors Corp.*, 33 F. 3d 737, 743 (7th Cir. 1994); *United States v. Dack*, 987 F. 2d 1282, 1284 (7th Cir. 1993) (we must construe the instructions in their entirety, not in isolation, and look for overall fairness and accuracy.)).  The final drafting of jury instructions is a matter left to the Courts discretion.  *Spiller v. Brady*, 169 F. 3d 1064, 1066 (7th Cir. 1999).

   **A.   The Court Properly Gave Plaintiffs Instruction No. 21**

Defendants contend the Court erred because Plaintiffs Instruction No. 21 (1) does not accurately define a seizure because it does not reference the Fourth Amendment and is inferior to Defendants competing instruction; (2) includes a list of factors that impermissibly suggests the factors are exhaustive; and (3) contains a list of factors that are not supported by case law.

Defendants first argument is a non-starter.  There is no need to include a reference to the Fourth Amendment in the instruction so long as the instruction is correct.  Plaintiffs instruction was legally sound.  The instruction states that [a] person has been detained if a reasonable person in that position would not feel free to disregard the police and go about his or her business.  This language is lifted directly from the Courts opinion denying summary judgment: [t]he question is whether a reasonable person would feel free to disregard the police and go about his business. *Warfield v. City of Chicago*, 565 F.Supp.2d 948, 966 (N.D.Ill. 2008), *quoting United States v. Scheets*, 188 F.3d 829, 836 (7th Cir. 1999).  That language is proper and accurately instructs lay jurors about the law they must apply to the facts as they have found them.

Defendants next contend that giving Plaintiffs instruction constituted reversible error because the factors in Plaintiffs instruction appeared to be an exhaustive list, while Defendants competing instruction instructed the jury to look to the totality of the circumstances. Def. Mot. at 7. Plaintiffs disagree. Indeed, if there is a meaningful difference between the parties competing instructions it is lost on Plaintiffs. Plaintiffs instruction uses the language all relevant circumstances and Defendants states in view of all the circumstances surrounding the incident. Def. Ex. B & C. Giving Plaintiffs language was not error.

Plaintiffs instruction specifically stated that [t]he circumstances that may be considered include, but are not limited to several factors. Def. Ex. B. Meanwhile, Defendants instruction stated that [f]actors that you may look at when making your determination include several factors that also appeared in Plaintiffs instruction no. 21. Def. Ex. C. If anything, Plaintiffs instruction was more explicit about the fact that the jury was not limited to consider only the factors listed. Def. Ex. B.

Finally, the factors listed in Plaintiffs Instruction No. 21 are all amply supported by case law. As an initial matter, Plaintiffs and Defendants both cited the following factors, which were properly included in Plaintiffs instruction no. 21: whether the encounter occurred in a public or private place; whether the suspect was informed that he was not under arrest and free to leave; whether the suspect consented or refused to talk to the investigating officers; whether the investigating officers removed the suspect to another area; whether there was physical touching, display of weapons, or other threatening conduct; and whether the suspect eventually departed the area without hindrance.

Other Seventh Circuit and Northern District opinions have identified other factors as relevant in circumstances applicable to the present case, which are accurately reflected in Plaintiffs Instruction No. 21.

### Placement in a Locked Room

Whether a person is placed in a locked room or another location from which they are physically unable to leave is clearly a relevant factor to consider in determining whether that person felt free to leave. In *United States v. Ienco*, 192 F.3d 517 (7th Cir. 1999), for example, the Seventh Circuit addressed whether a person who had been placed in a locked police car had

been detained. The Seventh Circuit noted the obvious, that Ienco was not free to leave if he wanted to, because the police car was locked from the outside. *Id.* at 523. Similarly, in *United States v. Jones*, 21 F.3d 165 (7th Cir. 1994) the Seventh Circuit quoted with approval factors laid out in *United States v. Hocking*, 860 F.2d 769, 773 (7th Cir. 1988), which include the accuseds freedom to leave the scene. *Id.* at 170.

### Length of Detention

The length of time that a person is detained is also a relevant circumstance to consider when determining whether a reasonable person would have felt free to leave. In *Ienco*, the person at issue was detained by the police by being placed in a locked police car for a half-hour 192 F.3d at 523. The Seventh Circuit determined that the length of this detention transformed the persons encounter from a lawful *Terry* stop to a detention that had to be supported by probable cause. *Id.* In *Jones*, the Seventh Circuit also recognized that the purpose, place and *length* of detention are all relevant factors to consider in determining whether someone has been detained. 21 F.3d at 170 (quoting *Hocking*, 860 F.2d at 773) (emphasis added). In *United States v. Borys*, 766 F.2d 304 (7th Cir. 1985), the Seventh Circuit indicated that continual interrogation over a long period of time, as some of the Plaintiffs experienced, would be a relevant factor in determining whether someone had been detained. *Id.* at 311 (citing *Florida v. Royer*, 460 U.S. 491, 502-03) (continued questioning in private, enclosed room when officers had detained defendants belongings without his consent was unreasonably intrusive investigative detention); *United States v. Gooding*, 695 F.2d 78, 82 (4th Cir.1982) (holding defendant was seized when officers persisted in questioning him). Instructing the jury in the present case to consider this factor was therefore appropriate.

### The Age of the Person

The relevant Fourth Amendment inquiry is an objective test conducted from the perspective of the plaintiff. For that reason, the age of the person being detained, a factor cited in Plaintiffs Instruction No. 21, is perfectly appropriate. Two of the Plaintiffs, Jalessa Bonner and Deshaun Fox, were minors when the seizure at issue in this case occurred. Jalessa was fourteen, and Deshaun was eight. In *Doe v. Heck*, 327 F.3d 492 (7th Cir. 2003) the Seventh Circuit

considered whether an eleven-year old student would have felt free to leave when he was confronted by the school principal, caseworkers, and a uniformed police officer, taken to the schools nursery, and questioned. *Id.* at 510. Applying *United States v. Mendenhall*, 446 U.S. 544 (1980), the Seventh Circuit determined that [u]nder these circumstances, we conclude that [the student] was seized with the meaning of the Fourth Amendment because no reasonable child would have believed that he was free to leave the nursery. *Id*. (emphasis added). Thus, the fact that a person is a child is a permissible factor to consider in weighing whether a Plaintiff was free to leave.

### Denial of Access to Family Members in Person or by Telephone

Finally, courts have previously considered denial of access to family members in person or by telephone as a relevant factor in considering whether someone would feel free to end an encounter with the police. In *United States v. Conrad*, 578 F.Supp.2d 1016 (N.D. Ill. 2008), the Court found that a person must have felt free to refuse a police officers request to come to the police station for questioning because the police officer allowed the defendant to call his father by telephone. *Id.* at 1041. In *Borys*, cited above, the Seventh Circuit also concluded that a man stopped by police at the airport must have felt free to leave because, in part, the police allowed him to make a personal telephone call. 766 F.2d at 310. The converse is also true, namely that in a situation in which the police bring someone to the police station but deny that persons requests to call family members or visit with family members who have arrived at the police station, that person is less likely to feel free to leave. It was appropriate to instruct a jury that this may be considered a factor in determining whether those individuals were detained.

***

In sum, Defendants are not entitled to a new trial because Plaintiffs instruction no. 21 accurately stated the law and was not meaningfully different from Defendants competing instruction no. 8.

### B.     The Court did not Err in Refusing Defendants *Hall* Instruction

The Court did not err in refusing Defendants *Hall* instruction because it was cumulative of the instructions that were given. The instruction stated that the burden was on Plaintiffs to ascertain that they were not free to leave, *see* Def. Ex. D, but the jury was already instructed that the Plaintiffs bore the burden to prove their claim - *i.e.*, that they were not free to leave. *See United States v. Chavin*, 316 F.3d 666, 670 (7th Cir. 2002) (no error to reject redundant instructions).

Moreover, Defendants tendered instruction nos. 9 and 10, both of which were given by the Court over Plaintiffs objection, adequately covered the topic of whether Plaintiffs were informed that they were free to leave. R. 1781-82. Defendants instruction nos. 9 and 10 provided: [w]hile you may consider whether a witness was advised that he was free to leave, there is no constitutional or other legal mandate to give such warnings. If a witness is not in custody, then he does not have to be advised of his right to leave the encounter. Defendants wanted the Court to further instruct the jury that they may infer from the failure to ask if a person was free to leave that the person wished to stay, but the Court properly denied that request, stating that Defendants were free to argue that point. R. 1783; *see Spiller*, 169 F. 3d at 1066 (court has discretion in the language used to instruct the jury). As it turned out, Defendants did not even reference the inference contained in their instruction no. 11 in their closing argument.

The Court properly refused instruction no. 11. Even if it was error, Defendants cannot maintain that it was reversible error, given their failure in closing to even mention the inference about which they wanted the Court to instruct the jury.

### IV.    The Court Did Not Err in Responding to the Jurys First Question

The Courts response to a question from the jury is a matter left entirely to the Courts discretion. *United States v. Span*, 170 F. 3d 798, 802 (7th Cir. 1999). [I]f the original instruction clearly and correctly states the applicable law, the judge may properly answer the jurys question by instructing the jury to reread the instruction. *Id.*, *quoting United States v. Mealy*, 851 F.2d 890, 902 (7th Cir. 1988).

The Court properly directed the jury back to the elements instruction defining what the jury needed to consider in order to deliver a verdict on Plaintiffs unconstitutional detention

count. Defendants complain that the Court did not also specifically refer the jury to Defendants instruction no. 9. But that instruction does not include the elements necessary to determine whether a person has been unconstitutionally detained.[1] Accordingly, there was no need to specifically reference Defendants instruction no. 9. Moreover, the Courts response referred the jury to all of the instructions, including Defendants instruction no. 9.

As explained above, Plaintiffs instruction no. 21 was legally sound and, therefore, referring the jury to all of the instructions and specifically referencing Plaintiffs instruction no. 21 was not error. *See Mealy*, 851 F.2d at 902.

V.  **Laginas Testimony About Why She Called Her Boyfriend, Family, and Channel Five News Was Not Hearsay**

Defendants complain that Lagina Warfield in effect testified to out of court statements and that, accordingly, the Court admitted inadmissible hearsay. Defendants argument puts the cart before the horse. In order to demonstrate that an evidentiary error was made, Defendants must first establish that Laginas testimony was hearsay. The lack of case support for Defendants argument is telling. Simply put, ones unexpressed thoughts are not hearsay.

In order for a statement to be barred under the hearsay rule, it must be an out of court statement offered for the truth of the matter asserted. Fed. R. Evid. 801. Hearsay is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted. Fed. R. Evid. 801(c). A statement is further defined as (1) an oral or written assertion or (2) nonverbal conduct of a person, if it is intended by the person as an assertion. Fed. R. Evid. 801(a).

Laginas explanation for why she made the phone calls are no more hearsay than Plaintiffs explanations for why they did not feel free to leave. Laginas thoughts about why she used her cell phone were neither oral nor written, nor were they nonverbal conduct. Thus, they were not statements and could not have been hearsay under the Federal Rules of Evidence.

Defendants novel assertion that the hearsay rule should be expanded to include non-hearsay testimony would require this Court to redefine statement contrary to Federal Rule of

---

[1] Ironically, Plaintiffs suggested that Defendants instruction no. 9 be included in the elements instruction, but Defendants did not take Plaintiffs up on that offer. *See* R. 1781.

Evidence 801(a). In the absence of any case law interpreting Federal Rule of Evidence 801(a) in such a manner, it was not error to admit Laginas non-hearsay testimony.

VI. **The Court Properly Admitted Evidence that the Plaintiffs Were Shot At in Accordance with the Courts Motion *in Limine* Rulings**

Defendants confuse testimony about the *existence* of the shooting with testimony about the *propriety* of that shooting. The Court properly admitted testimony that the Plaintiffs were shot at for the limited purpose of the Plaintiffs state of mind while they were at the police station. R. 1192. The relevancy of this evidence is obvious. Plaintiffs expressed desire to be with family and not at the police station is corroborated by the fact that they were just fired upon immediately before coming into contact with the police. Furthermore, it also substantiates Plaintiffs damages claims. Persons who were held at the police station involuntarily are likely to be harmed more if they were just traumatized by gunfire.

Defendants argument seems to come down to the notion that it was impermissible for Plaintiffs counsel to use the phrase shot at because that called the propriety of the shooting into question. Def. Mot. at 12 (citing R. 777, 787, 791, 793, 846, 943, 1122, 1126, 1408-09, 1436, 1528, 1741, where the phrase shot at appears on each page). It is undisputed that the Plaintiffs were in the vestibule when the shots were fired into the vestibule. From Plaintiffs perspective, they were shot at by the shooter whether or not the shooter was or was not justified in pulling the trigger. The fact that the Plaintiffs had been fired upon was one of circumstances for the jury to consider when determining whether a reasonable person in Plaintiffs position would have felt free to leave. Whether or not Plaintiffs were the intended target of those bullets was irrelevant to this inquiry because to Plaintiffs subjective view, they were the intended targets - one of the girls they were with was shot by one of the bullets. The jury was required then to determine from an objective viewpoint whether a reasonable person, in the circumstances Plaintiffs were positioned, would have felt free to leave.

Moreover, it would be entirely impossible to bar testimony about the shooting in its entirety as what transpired in the vestibule and immediately thereafter was the basis for Plaintiffs being at the police station all night under either partys version of the events. Although testimony that the police had no justification for shooting Seneca Smith was barred, it would be impossible

to excise Plaintiffs experience of being shot at from this trial. That was the exact topic on which they were questioned by the Defendant detectives at the police station, a topic that was necessarily covered in depth by both sides.

For similar reasons, Defendants dispute about the characterization of Plaintiffs as crime victims is a non-starter. From Plaintiffs perspective, it mattered not that it was the police who were firing at them rather than a civilian. It was undisputed that Plaintiffs themselves did nothing to cause the police to shoot at them. Thus, a comparison between Plaintiffs and victims of civilian shootings was proper because both sets of persons are victimized by events beyond their control.[2]

Finally, even if the police were justified in shooting Seneca Smith in the vestibule, that fact would have no bearing on this trial. The question for the jury was whether Plaintiffs were seized at the police station. Whether they witnessed a justified or unjustified shooting does not alter whether they were involuntarily detained, particularly given the fact that Defendants elicited evidence that Plaintiffs had no knowledge about whether the shooting was justified or not.

**VII.   The Court Properly Barred Irrelevant Evidence of Seneca Smiths Conviction**

Defendants contend that Plaintiffs improperly elicited evidence about the propriety of the shooting, but only point to portions of the testimony in which Plaintiffs counsel used the phrase shot at. Nothing about using that phrase calls into question the propriety of the shooting. The fact is, Plaintiffs were shot at. They were in the vestibule when shots were fired towards them. Such a characterization says nothing about whether or not the shooting was justified.

Moreover, Seneca Smiths conviction was irrelevant to any issue at trial. He did not testify and Defendants do not suggest how Seneca Smiths conviction (years after the fact) has any bearing on the question for the jury regarding the events on June 27 and June 28, 2004.

---

[2] In fact, Plaintiffs fit even more squarely into the victim category because some victims of shootings may be partly culpable for the shooting due to their prior conduct.

**VIII.     Moseleys Testimony Was Properly Admitted Into Evidence and, Therefore, Properly Argued to the Jury**

Despite the heading on page 13 of their motion, Defendants do not argue that Sgt. Moseleys testimony was improperly admitted. Defendants have, therefore, waived any argument that his testimony was improperly admitted.

In any event, Sgt. Moseleys testimony was properly admitted both because the Defendants training with respect to treatment of witnesses was relevant to how Plaintiffs were treated, and as impeachment evidence. Plaintiffs claimed they were treated in a certain way, and the Defendants denied that they treated Plaintiffs this way. It is highly relevant that the Defendant detectives were trained to treat all witnesses in the way that Plaintiffs claim they were treated, and conversely, that if Plaintiffs were not treated in the alleged manner, then there would have to have been some reason why the Defendants deviated from the usual expectation of how witnesses were treated.

Having abandoned any complaint about the admission of Moseleys testimony, Defendants sole surviving complaint is that Plaintiffs counsel improperly argued that the training applied to all of the Detectives, rather than just one of them. Def. Mot. at 13. But as the Court ruled, arguments about the number of detectives impeached by Moseleys testimony went to the weight of the evidence, not its admissibility. R. 1499. There was nothing inappropriate about Plaintiffs counsel arguing that Sergeant Moseleys testimony contradicted the detectives claims at trial.

**IX.     Plaintiffs Counsels Argument that the Defendants Were Trying to Stereotype Plaintiffs Was Proper**

Defendants contend that the Plaintiffs counsels reference to the fact that Plaintiffs were African-American was solely for shock value. Def. Mot. at 14. Rather, Plaintiffs counsel referenced Plaintiffs race to explain why Defendants would lie about Plaintiffs laughing and joking at the police station.

Plaintiffs counsels argument was proper because it was a fair inference from the record. The detectives repeatedly testified that Plaintiffs were laughing and joking throughout their detention. Plaintiffs flatly denied this. Accordingly, Plaintiffs position was that the detectives were lying about this.

11

In his closing argument, Plaintiffs counsel explained why the detectives were lying about this point. Plaintiffs argued that the detectives were lying because they wanted the jury to view the Plaintiffs as simple people who did not really mind having been shot at earlier that evening or seeing their 13 year-old friend get shot in the shoulder. As Plaintiffs counsel argued, [d]ont buy into the stereotype. These women have feelings. They have emotions, and they were deeply affected by what happened to them that night. To accept that they just frivolously laughed at what happened to them would be to adopt the caricature that the defendants are trying to draw. R. 1825. Plaintiffs were permitted to rebut Defendants insinuation that Plaintiffs were within the dated stereotype of African-American women as perpetually jolly persons who are unaffected by events that surround them.

Defendants argue that Plaintiffs argument was particularly prejudicial because Plaintiffs presented no real motive for Defendants actions. To be absolutely clear, Plaintiffs argued that the Defendants unconstitutionally detained Plaintiffs because Plaintiffs were saying that Seneca did not have a gun and they needed to lean on Plaintiffs to force them to change their story. *See, e.g.*, R. 1812. Plaintiffs argument pertaining to Plaintiffs race was directed solely at one part of Defendants story, in which the Defendants contended that Plaintiffs were laughing and joking at the station. Plaintiffs did not base their entire case on Plaintiffs race, and Plaintiffs closing argument on this point comprised less than two transcript pages.

Plaintiffs argument properly provided the jury with an explanation for why Defendants would lie about Plaintiffs laughing and joking at the police station and thus the argument did not raise the issue of race solely for shock value. Accordingly, Plaintiffs counsels argument was permissible.

## X.     Plaintiffs Closing Argument Regarding Deshaun Was Proper

Defendants claim error in two respects with regard to Plaintiffs closing argument about Deshaun. They claim that it was improper to reference what was purportedly in Deshauns deposition when he did not testify nor had the deposition been admitted. Def. Mot. at 15.

First, Plaintiffs never referenced what was in Deshauns deposition. Plaintiffs were simply responding to Defendants insinuation that Deshauns testimony would have been adverse to Plaintiffs case because they did not call him as a witness, despite the fact that he had testified

at his deposition. R. 1870.  Plaintiffs were permitted to then argue that, if Deshauns testimony was truly adverse to Plaintiffs, Defendants would have called him as a witness.

Once the Defendants suggested that Deshauns missing testimony was adverse to Plaintiffs, it was entirely proper for Plaintiffs to rebut that insinuation by alerting the jury that the defense could have called him.  As the Seventh Circuit has stated,

> In a case like this where the defendant himself has broached the subject of missing witnesses by asking the jury to in a sense penalize the government for its failure to produce the [witnesses], the prosecutors argument in response clearly was proper ... [T]he prosecutors observation that the defense could produce a certain witness or witnesses if it wished neither alters the burden of proof nor penalizes the existence of a constitutional right. Rather, the argument merely conveys information that [t]he jury is entitled to know.

*United States v. King*, 150 F.3d 644, 649 (7th Cir. 1998) *quoting United States v. Sblendorio*, 830 F.2d 1382, 1393 (7th Cir. 1987).  As *Sblendorio* explains, once the defendant has opened the subject, two can play.  830 F.2d at 1394.  Asking the jury to draw an adverse inference in that circumstance ... merely requests the jury to draw its own conclusions from the defendants choices in the conduct of the trial.  *King*, 150 F.3d at 649, *quoting Sblendorio*, 830 F.2d at 1394.

Defendants also complain that it was highly prejudicial to say that Deshaun was not called because of the grilling that Plaintiffs went through on the witness stand.  Defendants never objected to this argument and thus their objection is waived.  Putting that procedural defect aside, the jury observed the manner in which defense counsel harshly cross-examined Plaintiffs.  A fair inference from that evidence is that a mother would not want her thirteen year-old son to be subjected to that experience.  Simply because Lagina did not voice that reason from the witness stand does not mean that Plaintiff cannot argue the point.  *See* Seventh Circuit Pattern Jury Instruction § 1.12 (explaining that, everything else being equal, direct and circumstantial evidence are entitled to the same weight), which the jury was free to accept or reject as it saw fit, consistent with this Courts instruction that what lawyers say is argument, not evidence.

**Conclusion**

Defendants arguments have no merit and, even if they did, none of the alleged errors affected the outcome of the trial. Defendants motion should be denied in its entirety.

RESPECTFULLY SUBMITTED,

S/Russell Ainsworth
Attorneys for Plaintiffs

Arthur Loevy
Jon Loevy
Russell Ainsworth
Tara Thompson
Michaele Turnage Young
LOEVY & LOEVY
312 North May Street
Suite 100
Chicago, IL 60607
(312) 243-5900

**CERTIFICATE OF SERVICE**

I, Russell Ainsworth, an attorney, certify that on August 24, 2009 I delivered by electronic means a copy of the attached Response to all counsel of record.

S/Russell Ainsworth