```
            IN THE UNITED STATES DISTRICT COURT
         NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

CARRIE WARFIELD, et al.,      )
                              )
        Plaintiffs,           )
                              )    Judge Castillo
             v.               )
                              )    05 C 3712
CITY OF CHICAGO, et al.,      )
                              )
        Defendants.           )
```

## PLAINTIFFS' RESPONSE TO
## DEFENDANTS' MOTION TO WAIVE A SUPERSEDEAS BOND

Federal Rule of Civil Procedure 62 provides simply that parties can obtain an automatic stay of execution of a money judgment by posting a supersedeas bond. Under well-settled case law discussed below, the movant bears a very heavy burden to justify departure from the bond requirement, a waiver of which is only appropriate in what many courts refer to as "extraordinary circumstances."

The Individual Defendants' primary argument here is that the Plaintiffs and the Court should accept their assurances that they are "good for" the money if the judgment is affirmed. This assurance is no substitute for the security to which judgment creditors are presumptively entitled. Applying the Seventh Circuit's <u>Dillon</u> factors, every last one of these factors counsels against the relief sought, especially the absence of any genuine assurances in the record that payment would be promptly forthcoming in the event Defendants fail in their attack on the verdict. Under the relevant case law, Defendants' request must be rejected.

**I.    Legal Standard**

As Defendants point out, Plaintiffs have already agreed to waive the requirement of a bond regarding the $100,000+ compensatory award for which the City is responsible.  As set forth below, the law plainly did not oblige Plaintiffs to extend that courtesy; however, they did so, so the issue is moot.

That leaves in dispute only the bond requirement regarding the $132,000 in punitive damages.  With respect to that verdict, the law is clear that the bond requirement should not be waived.

**A.    Under Well-Established Law, Judgment Creditors Are Entitled To The Protection Afforded By An Appeal Bond**

By its plain terms, Rule 62(d) requires a bond as a condition for staying judgment execution, and it provides nothing about a waiver of that requirement.[1]  Accordingly, "because Rule 62(d) expressly dictates that a supersedeas bond must be posted, only in 'extraordinary circumstances' should anything less be required."  Hamlin v. Charter Township of Flint, 181 F.R.D. 348, 353 (E.D.Mich. 1998); Bank of Nova Scotia v. Pemberton, 964 F. Supp. 189, 191 (D.V.I. 1997) ("The power of the court to waive the supersedeas bond requirement is exercised, however, only in 'extraordinary circumstances,' and only where alternative means of securing the judgment creditor's interest are available").  In that regard, the Seventh Circuit teaches that the district court

---

[1]    Rule 62(d) provides: "Stay Upon Appeal.  When an appeal is taken the appellant by giving a supersedeas bond may obtain a [judgment] stay subject to the exceptions contained in subdivision (a) of this rule.  The bond may be given at or after the time of filing the notice of appeal or of procuring the order allowing the appeal, as the case may be.  The stay is effective when the supersedeas bond is approved by the court."

2

has discretion to waive the Rule only "only if the appellant has a clearly demonstrated ability to satisfy the judgment in the event the appeal is unsuccessful and *there is no other concern* that the appellee's rights will be compromised by a failure adequately to secure the judgment." In re Carlson, 224 F.3d 716, 719 (7th Cir. 2000) ("Ordinarily a party is entitled to a stay pending appeal only by posting an appropriate bond").

As the Seventh Circuit has explained, "[t]he philosophy underlying Rule 62(d) is that a plaintiff who has won in the trial court should not be put to the expense of defending his judgment on appeal unless the defendant takes reasonable steps to assure that the judgment will be paid if affirmed. Posting a supersedeas bond is the simplest way of tendering this guaranty. . ." Lightfoot v. Walker, 797 F.2d 505, 506-07 (7th Cir. 1986). Viewed properly, the firm assurance of prompt payment in the event an appellee prevails is the *quid pro quo* price for dispensing with the surety. Poplar Grove Planting v. Bache Halsey Stewart, Inc., 600 F.2d 1189, 1191 (5th Cir. 1979) (a bond is "privilege extended the judgment debtor as a price of interdicting the validity of an order to pay money"). Thus, absent genuine assurances that payment would be unconditional, prompt, and without complication, courts are unwilling to waive the bond requirement. Lightfoot, 797 F.2d at 506-07.

**II.     As Applied Here, The Five Dillon Factors Do Not Justify A Departure From The Standard Requirement To Post Bond**

Defendants properly acknowledge the five Dillon factors, which are as follows:

3

> (1) the complexity of the collection process;
>
> (2) the amount of time required to obtain a judgment after it is affirmed on appeal;
>
> (3) the degree of confidence that the district court has in the availability of funds to pay the judgment;
>
> (4) whether the defendant's ability to pay the judgment is so plain that the cost of a bond would be a waste of money; and;
>
> (5) whether the defendant is in such a precarious financial situation that the requirement to post a bond would place other creditors of the defendant in an insecure position.

<u>Dillon v. City of Chicago</u>, 866 F.2d 902, 904-05 (7th Cir. 1988).

In this case, movants have failed to meet their burden to show that *any of* the <u>Dillon</u> factors support their position, much less the balance of them. <u>Hamlin</u>, 181 F.R.D. at 353 (burden is on the movant seeking to waive the bond).

### A. Factors One & Two: The Collection Process And Promptness Of Payment After The Judgment Is Affirmed

The fatally-flawed assumption underpinning Defendants' motion is that their mere assurances that they (supposedly) have the money is somehow good enough. That is not the case.

The first <u>Dillon</u> factor focused on the nature collection process. As a proposed substitute for a bond, the two declarations attached to Defendants' motion -- one signed, one **not** signed -- state that once they run out of appeals, Defendants will "raise the necessary funds to pay the judgment within 60 days" (and that if that changes anytime in the future, Defendants will let their counsel know). As a proposed "collection process," that is grossly insufficient. <u>Sorrano v. New York Life Ins. Co.</u>, 2006 WL 1005902, at *1-*2 (N.D.Ill. April 13, 2006) ("New York Life states that it has assets "in excess of $60

billion." But NYL does not say where those assets are located, whether they are liquid or easily liquidated or otherwise give any indication that the collection process will be not be lengthy and complicated.").

In support of their assurance that collection would be sufficiently prompt and smooth to dispense with the surety, Defendants' Declarations incorporate their prior interrogatory responses. However, Defendant Bogucki's interrogatory responses (which were not provided to the Court in support of the motion) do not corroborate the representation in this motion that he has the necessary funds. Quite the opposite, Bogucki's listed liquid assets fall far short of the verdict, and the only asset he lists that could possibly be reached by creditors indicates cryptically that it is held "in trust." And while Defendant Schalk's 2008 responses did list more assets than Bogucki's, they appeared to be reliant on the stock market; the vague assertion in his new declaration that his pre-stock market crash interrogatory accounting "remains accurate" is less than reassuring. Schmude v. Sheahan, 2004 WL 1179418, at *4 (N.D.Ill. May 25, 2004) (the "paltry submission, containing various self-serving statements, does not provide the court with a basis for waiving the requisite supersedeas bond. . . No realistic assessment of the scanty financial information given by [movant] can support a bondless appeal").[2]

---

[2] Plaintiff will bring copies of the Defendants' Interrogatory responses to the hearing on this motion for the Court's review.

Nor did the Defendants attach any documentary corroboration to support either their interrogatory responses or their declarations.  No bank statements, no asset statements, nothing. Koulouris v. Estate of Chalmers, 1993 WL 335815 (N.D. Ill. Aug. 27, 1993) (Aspen, J.) (denying Rule 62 motion because losing litigant "failed to satisfy his burden as movant in establishing grounds for waiving bond").  The only "record" they have made is their wholly-unsupported descriptions of what they are worth. Marcoux v. Farm Service and Supplies, Inc., 290 F.Supp.2d 457, 485-86 n.29 (S.D.N.Y. 2003) ("the lack of evidence provided by defendants, who retain the burden of proof on this motion, compels us to conclude that waiving the supersedeas bond would not preserve plaintiff's status quo adequately"); Marcoux v. Farm Service and Supplies, Inc., 290 F.Supp.2d 457, 485 (S.D.N.Y. 2003) ("Because a supersedeas bond is designed to protect the appellee, the party seeking the stay without a bond has the burden. . .").

Leaving aside absence of any corroborative record, even were the Court to assume that the Defendants truly did have the assets, Defendants are not even pretending they stand ready to pay at the conclusion of the case.  The best that they do is to promise they will start the process of liquidating assets at the point they are forced to do so.  The law, however, is plain that the mere possibility of delay is alone reason enough to adhere to Rule 62's requirement.  Preston v. Thompson, 565 F. Supp. 310, 317-18 (N.D.Ill. 1983) ("Even assuming the procedure outlined by the state worked without any substantial hitches, it was likely

6

that plaintiffs would be required to wait a not insubstantial period before collecting their judgment. . .").[3]

Instructive in that regard is the Seventh Circuit's Lightfoot decision, the seminal Rule 62 case in this Circuit, affirming the district court's refusal to waive the bond in connection with a $700,000 judgment against the State of Illinois, deep pockets and all. See Lightfoot, 797 F.2d at 506-07 (Illinois' tort judgment payment procedures deemed inadequate to justify waiving bond). As Judge Posner explained (id.):

> The State does not want to post a bond, and asked the district court to excuse it from doing so on the ground that the State of Illinois is solvent. . . . The state's argument for being excused from posting a bond is a *non sequitur.* The fact that the state has the financial wherewithal to pay a judgment for $700,000 can be of little solace to the plaintiffs when the state does not contest Judge Marshall's finding. . . that the procedure for collecting a judgment against the state is not only cumbersome and time-consuming, but uncertain in outcome, since the judgment cannot be paid unless and until the state legislature votes to appropriate the money necessary to pay it.

See also Tunis Bros. Co., Inc. v. Ford Motor Co., 1991 WL 8890, *1-*2 (E.D.Pa. Jan. 24, 1991) (no "extraordinary circumstances" justified waiving bond despite assets 5000x the $1.2M judgment).

Thus, the fact that Defendants may indeed be able to raise the cash to satisfy the judgment is simply not a justification

---

[3] While Lightfoot and Preston involved government defendants, the case against waiving a bond for an individual is obviously even harder to make, given the presumption that the State at least has a permanent address and is almost certainly good for the money eventually. See Gary A. v. New Trier H.S., Dist. 203, 1985 WL 4876, at *3 (N.D. Ill. 1985) ("The possibility that the plaintiff's recovery could again be delayed by the appropriations process if [affirmed] indicates plaintiff would indeed be substantially harmed if the bond is not posted").

7

for waiving the bond absent some genuine assurance that Defendants would or could promptly deliver at the conclusion of the litigation. Short of such assurances, Rule 62 cannot be simply ignored. Hamlin, 181 F.R.D. at 353 ("Rule 62(d)'s bond requirement serves a substantial function in balancing the parties' interest and is not a mere formality that should be waived simply because the losing party has adequate funds to satisfy the judgment. . . If this fact alone were enough to waive the bond requirement [it] would essentially be a nullity"). As one of this Court's colleagues explained:

> Because the stay operates for the appellant's benefit and deprives the appellee of the immediate benefits of his judgment, a full supersedeas bond should be the requirement in normal circumstances, such as where there is some reasonable likelihood of the judgment debtor's inability or unwillingness to satisfy the judgment in full upon ultimate disposition of the case and where posting adequate security is practicable. In unusual circumstances, however, the district court in its discretion may order partially secured or unsecured stays if they do not unduly endanger the judgment creditor's interest in ultimate recovery.

Strama v. Peterson, 537 F. Supp. 668, 670-71 (N.D. Ill. 1982) (Chicago's mere solvency was not a "particularly 'unusual circumstance'"; "[t]hough the City will in all likelihood be good for the liability if upheld, it does not stand ready 'to satisfy the judgment in full upon ultimate disposition of the case'--at least not without substantial delay"); Gary A. v. New Trier H.S., Dist. 203, 1985 WL 4876, *2-*3 (N.D.Ill. Dec. 11, 1985) ("The fact that the state is a solvent entity is not, standing alone, a special circumstance justifying waiver of the bond requirement [and] the suggestion that a special appropriation may be required

8

supports the position that the bond should be posted before execution of the judgment is stayed.  The possibility that the plaintiff's recovery could again be delayed by the appropriations process if [affirmed] indicates plaintiff would indeed be substantially harmed if the bond is not posted").

In Preston v. Thompson, 565 F.Supp. 310 (N.D.Ill. 1983), for example, Judge Marshall rejected the State of Illinois' arguments that its power to levy taxes, the integrity of the public fisc, and the financial burden on other public programs all justified waiving the bond.  Id. at 317-18. Given the uncertainties in the collection process, including necessity of approval from the General Assembly which does not convene often, the court noted:

> Even assuming the procedure outlined by the state worked without any substantial hitches, it was likely that plaintiffs would be required to wait a not insubstantial period before collecting their judgment. Moreover, there was a possibility that the legislature would vote not to appropriate the money to which plaintiffs were entitled.

Preston, 565 F.Supp. at 317-18 (waiver of the bond denied).

Yet another court in this District reached a similar conclusion in Gary A. v. New Trier H.S., Dist. 203, 1985 WL 4876, at *2-*3 (N.D.Ill. Dec. 11, 1985):

> The fact that the state is a solvent entity is not, standing alone, a special circumstance justifying waiver of the bond requirement.  Furthermore, the suggestion that a special appropriation may be required supports the position that the bond should be posted before execution of the judgment is stayed.  The possibility that the plaintiff's recovery could again be delayed by the appropriations process if the merits are affirmed indicates plaintiff would indeed be substantially harmed if the bond is not posted.

9

Thus, for all of these reasons, the mere fact that Defendants may be able to afford to pay the judgment is insufficient to justify the relief sought here. <u>Federal Ins. Co. v. County of Westchester</u>, 921 F.Supp. 1136, 1139 (S.D.N.Y. 1996) ("The County's showing with respect to each of the other prongs of the [test] is similarly conclusory, and therefore merits no better response than to say that it is insufficient on its face and unconvincing on its merits. Accordingly, the County is not entitled to a stay under Rule 62").

**B.   Factors Three & Four: Defendants' Resources**

All of the foregoing discussion assumes for the sake of argument that Defendants have the money.  As shown above, that conclusion requires a leap of faith -- Defendants have shown the Court no proof that they have the assets they claim to have.  The motion should be denied on that ground alone. <u>Cf.</u> <u>F.T.C. v. Publishing Clrn'g House, Inc.</u>, 1995 WL 792074, at *2 (D.Nev. 1995) (rejecting attempt to waive a bond on basis of "conclusory statements in [defendants'] affidavits").

Moreover, present ability to pay is no guarantee of continued ability to pay in the future. <u>Sorrano</u>, 2006 WL 1005902 at *1-*2 (New York Life "focuses solely on the last factor: its ability to pay. There is no question that NYL's current financial statements reflect billions of dollars in assets. As the newspaper regularly reminds us, however, even Fortune 500 companies can engage in questionable accounting practices, be forced to restate their financials and declare bankruptcy. Given the prevailing business climate, a copy of NYL's financial

10

statements and a promise that it is 'good for' any judgment is not enough to secure waiver of the bond.").

### C. Factor Five: Whether The Cost Of The Bond Would Leave Defendants So Precarious That Other Creditors Would Be Prejudiced

Defendants do not even attempt to dispute that this factor cuts against their motion, and it obviously does. The cost of the bond here would not prejudice any creditors.[4]

As Judge Posner observed in Lightfoot, 797 F.2d at 506-507, "[t]he cost is usually one percent of the amount of the bond. . ." In this case, Defendants have not established any record for the Court's consideration in that he fails to document what it would cost to obtain a bond. Tunis Bros. Co., Inc., 1991 WL 8890, at *1-*2 ("As Defendants have not satisfied the court that posting a bond is impossible or impractical, the court does not find the current circumstances so extraordinary as to warrant an exception to the requirements of Rule 62(d)").

All of this begs a question: If the cost of the bonds is estimated at approximately $660/bond, what is really motivating this motion? More than that was spent by the defense, for example, on plenty of the depositions in the case. Plaintiff submits that the real problem from the defense perspective from having a bond in place is that it would actually guarantee prompt

---

[4] On the subject of other creditors, these same two Defendants have been sued in a wrongful conviction case now pending before Judge Kennelly. That Plaintiff could end up with a judgment against these Defendants, which would further jeopardize the possibility of prompt payment to the Warfield Plaintiffs in lieu of a bond.

11

payment. That (not the $600) is what the Defendants actually seek to avoid.

## Conclusion

Plaintiffs are not unsympathetic that the cost of a bond imposes a cost on the Defendants. But the case law plainly entitles Plaintiff to that security. Besides, these are concerns that could and should have been considered long before the trial, when the Court tried <u>repeatedly</u> to settle the case in a way that would not expose these officers to personal liability, recommendations that the Plaintiffs accepted, but the defense did not. Defendants got the trial they demanded, but there is no justification to dispense with Rule 62 based on an appeal to sympathy.

RESPECTFULLY SUBMITTED:


<u>S/Russell Ainsworth</u>
Attorneys for Plaintiffs


Arthur Loevy
Russell Ainsworth
Jon Loevy
LOEVY & LOEVY
312 North May Street
Suite 100
Chicago, IL 60607
(312) 243-5900

**CERTIFICATE OF SERVICE**

    I, Russell Ainsworth, an attorney, certify that on March 30, 2010 I delivered by electronic means a copy of the attached Response to all counsel of record.


<u>S/Russell Ainsworth</u>