# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| CARRIE WARFIELD, LAGINA WARFIELD, individually and on behalf of her minor son, DESHAUN FOX, JENNIFER WARFIELD, LATOYA POWELL, MARY BONNER, and JALESSA BONNER, | No. 05 C 3712 |
| Plaintiffs, | Judge Ruben Castillo |
| v. | |
| CITY OF CHICAGO, et al., | |
| Defendants. | |

## MEMORANDUM OPINION AND ORDER

Carrie Warfield ("Carrie"), Lagina Warfield ("Lagina") on behalf of herself and her minor son Deshaun Fox ("Deshaun"), Jennifer Warfield ("Jennifer"), Latoya Powell ("Latoya"), Mary Bonner ("Mary"), and Jalessa Bonner ("Jalessa") (collectively, "Plaintiffs"), brought this unlawful detention suit pursuant to 42 U.S.C. § 1983 ("Section 1983") against the City of Chicago (the "City"), and Chicago police detectives Raymond Schalk ("Schalk"), Jerome Bogucki ("Bogucki"), Michael Muzupappa ("Muzupappa"), and Bruce Kischner ("Kischner") (collectively, "Defendants"). (R. 64, Third Am. Compl.) Currently before the Court are Defendants' Bill of Costs (R. 484), Plaintiffs' Bill of Costs (R. 485), Plaintiffs' Fee Petition (R. 486, Ex. A) and Plaintiffs' Motion to Enhance the Lodestar ("Pls.' Mot.") (R. 501). For the following reasons, Defendants' Bill of Cost is denied, Plaintiffs' Bill of Cost and Fee Petition are granted in part and denied in part and Plaintiffs' motion to enhance the lodestar is denied.

# BACKGROUND[1]

Plaintiffs' complaint contained eight counts against ten individual defendants and the City. (*See* R. 64, Third Am. Compl.) On April 1, 2008, Defendants moved for summary judgment on all of Plaintiffs' claims. (R. 182, Defs.' Summ. J. Mot.) In response to Defendants' motion, Plaintiffs agreed to dismiss two of their claims, a Fourth Amendment claim based on the allegedly unreasonable search of Carrie and Lagina's residence and a state law intrusion claim against Chatman and Collier. (R. 195-1, Pls.' Opp'n to Summ. J. at 17.) On July 16, 2008, the Court ruled on the summary judgment motion and entered judgment in Defendants' favor with regard to the excessive force and intentional infliction of emotional distress claims against Chatman and Collier. *Warfield*, 565 F. Supp. 2d at 968. Subsequently, Plaintiffs agreed to dismiss several other Defendants that were named in the complaint and their false imprisonment claim.[2] (R. 417, Min. Entry.)

When the trial began on July 13, 2009, only an unlawful detention claim against the previously named Defendants proceeded to trial. (R. 406, Min. Entry.) On July 23, 2009, the jury entered a verdict in favor of Plaintiffs and awarded over $240,000 in damages against

---

[1] This case has a long and arduous history before the Court. The underlying facts have already been set forth in this Court's prior opinion. *See Warfield v. City of Chi.*, 565 F. Supp. 2d 948 (N.D. Ill. 2008). Accordingly, only relevant facts and procedural history will be discussed here.

[2] Plaintiffs elected to voluntarily dismiss Detectives Antonio Allen, John Hillmann, Valerie Lymperis and Alan Pergande and proceed solely against the City for their conduct pursuant to the City's certification. (*See* R. 417, Min. Entry.)

Defendants.[3] (R. 424, Entered Judgment.) On August 10, 2009, Defendants filed motions for a new trial (R. 427) and judgment as a matter of law (R. 428). Both motions were denied by the Court on January 7, 2010. *Warfield v. City of Chi.*, 679 F. Supp. 2d 876 (N.D. Ill. 2010).

On April 16, 2010, Defendants filed a Bill of Costs. (R. 484, Defs.' Bill of Costs.) Defendants claim that Chatman and Collier were the "prevailing parties" in their summary judgment motion as evidenced by the Court's July 16, 2008 Order and therefore are entitled to an award of costs. (R. 528, Defs.' Bill of Costs Reply at 2.) On April 19, 2010, Plaintiffs filed their Bill of Costs and Fee Petition. (R. 485, Pls.' Bill of Costs; R. 488-1, Pls.' Fee Petition.) In addition, on May 7, 2010, Plaintiffs requested that the Court adjust the lodestar "to the amount of fees billed by and paid to the Defendants' law firm in this case." (R. 501, Pls.' Mot. at 3.)

---

[3] Specifically, the jury found as follows:
- In favor of Carrie and against Schalk, Bogucki and Pergande in the amount of $9,000 in compensatory damages, $500 in punitive damages as to Schalk, and $500 in punitive damages as to Bogucki.
- In favor of Lagina and against Schalk, Bogucki and Muzupappa in the amount of $20,000 in compensatory damages, $15,000 in punitive damages as to Schalk, and $15,000 in punitive damages as to Bogucki.
- In favor of Deshaun and against Schalk, Bogucki and Muzupappa in the amount of $25,000 in compensatory damages, $20,000 in punitive damages as to Schalk, and $20,000 in punitive damages as to Bogucki.
- In favor of Jennifer and against Schalk, Bogucki and Hillmann in the amount of $2.00 in compensatory damages, $250 in punitive damages as to Schalk and $250 in punitive damages as to Bogucki.
- In favor of Latoya and against Schalk, Bogucki and Kischner in the amount of $2.00 in compensatory damages, $310 in punitive damages as to Schalk and $310 in punitive damages as to Bogucki.
- In favor of Mary and against Schalk, Bogucki and Lymperis in the amount of $15,000 in compensatory damages, $10,000 in punitive damages as to Schalk and $10,000 in punitive damages as to Bogucki.
- In favor of Jalessa and against Schalk, Bogucki, Allen and Lymperis in the amount of $40,000 in compensatory damages, $20,000 in punitive damages as to Schalk and $20,000 in punitive damages as to Bogucki.

## LEGAL STANDARD

In a Section 1983 action, the Civil Rights Attorney's Fees Awards Act, 42 U.S.C. § 1988 ("Section 1988") provides that: "the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee as part of the costs . . . ." 42 U.S.C. § 1988(b). Further, under the Federal Rules of Civil Procedure, "costs--other than attorney's fees--should be allowed to the prevailing party." Fed. R. Civ. P. 54(d)(1).

## ANALYSIS

### I. Costs

In this case, both parties argue that they were a "prevailing party" in this litigation and are entitled to awards of costs. (*See* R. 484, Defs.' Bill of Costs; R. 485, Pls.' Bill of Costs.)

#### A. Defendants' Bill of Costs

First, Defendants seek $9,774.47 in costs. (R. 484, Defs.' Bill of Costs.) They argue that pursuant to the Court's July 16, 2008 Order, they prevailed on every claim brought against Chatman and Collier and therefore are entitled to this recovery. (R. 528, Defs.' Bill of Costs Reply at 1-5.) While Defendants' acknowledge that Plaintiffs were also prevailing parties in this litigation, they argue that "this Court should apportion the costs after examining each of the parties' success." (*Id.* at 3.)

The cases Defendants cite for support, including *Hensley v. Eckerhart*, 461 US. 424 (1983), involve the apportionment of attorney's fees based on the extent of each parties' success. (*See* R. 528, Defs.' Bill of Costs Reply at 2-5.) However, costs, not attorney's fees, are at issue here. The award of costs is primarily governed by Federal Rule 54(d). *See* Fed. R. Civ. P. 54(d)(1). Under Rule 54(d), "the 'prevailing party' is the party who prevails as to the substantial

part of the litigation." *Testa v. Village of Mundelein*, 89 F.3d 443, 447 (7th Cir. 1996). "[A] determination of who is the prevailing party for purposes of awarding costs should not depend on the position of the parties at each stage of the litigation but should be made when the controversy is finally decided." *Republic Tobacco Co. v. N. Atl. Trading Co. Inc.*, 481 F.3d 442, 446 (7th Cir. 2007) (quoting Wright & Miller, Federal Practice & Procedure § 2667 (3d ed. 2006)).

In *Slane v. Mariah Boats Inc.*, 164 F.3d 1065 (7th Cir. 1999), the defendant successfully defeated some of plaintiff's claims in its summary judgment motion. The district court found that although both the plaintiff and defendant had each won two claims, the plaintiff was the prevailing party because he ultimately "won the battle" with the jury's verdict and award of damages. *Id.* at 1068. The Seventh Circuit affirmed this decision noting that "when one party gets substantial relief it 'prevails' even if it doesn't win on every claim." *Id.*

Similarly, in this case, although the Court granted summary judgment in Defendants' favor with regard to the claims against Chatman and Collier, the jury ultimately entered a verdict in Plaintiffs' favor and awarded over $240,000 in damages against Defendants. (*See* R. 424, Entered Judgment.) Although Defendants attempt to characterize this jury award as a "singular, discreet [sic] victory," (R. 528, Defs.' Reply at 3), the Court finds that the compensatory and punitive damages awarded were unquestionably substantial. *See Slane*, 164 F.3d at 1068 (determining that a $225,000 jury award constitutes "substantial relief"). As such, Defendants are not the prevailing parties in this litigation for the purposes of an award of costs. Accordingly, their motion for costs is denied.

### B. Plaintiffs' Bill of Costs

Next, Plaintiffs seek $36,480.25 in costs. (R. 485, Pls.' Bill of Costs.) Since Plaintiffs

are the prevailing parties in this litigation, there is a "strong presumption" that they should recover their costs. *See Park v. City of Chi.*, 297 F.3d 606, 617 (7th Cir. 2002). However, a district court may not tax costs under Rule 54(d) unless a federal statute authorizes such an award. *Republic Tobacco Co.*, 481 F.3d at 447. The list of recoverable costs authorized pursuant to 28 U.S.C. § 1920 include:

1. Fees of the clerk and marshal;
2. Fees for printed or electronically recorded transcripts necessarily obtained for use in the case;
3. Fees and disbursements for printing and witnesses;
4. Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case;
5. Docket fees; and
6. Compensation of court appointed experts.

28 U.S.C. § 1920. Further, Section 1988 authorizes a party to recover costs for "expert fees." 42 U.S.C. § 1988(c). "[I]n addition to being authorized by statute, a cost must be both reasonable and necessary to the litigation for a prevailing party to recover it." *Little v. Mitsubishi*, 514 F.3d 699, 702 (7th Cir. 2007). Defendants argue that several categories of Plaintiffs' requested costs are not recoverable. (R. 518, Defs.' Resp. at 22-25; R. 528 Defs.' Reply at 6-13.)

### 1. Experts

Defendants first argue that Plaintiffs' *Monell* expert, Norman Smith ("Smith"), was not a "court appointed expert," and therefore the $5,200 in costs for his fees are not recoverable. (R. 518, Defs.' Resp. at 22.) Defendants' argument fails, as Section 1988 does not require that an

expert be court appointed for his fees to be recovered as costs.[4] *See* 42 U.S.C. § 1988(c). Accordingly, because Smith was an expert reasonably used in this case, his fees are recoverable. The additional $946.57 Plaintiffs seek in expert fees, however, is not recoverable because Plaintiffs have provided no indication that this expense was related to an expert. (*See* R. 485, Pls.' Bill of Costs, Ex. A.) Accordingly, the recoverable expert costs are reduced from $6,146.57 to $5,200.

### 2. Deposition Transcripts

Next, Defendants argue that deposition transcript costs related to "the shooting and search related claims on which [] Chatman, Collier, and the City prevailed" are not recoverable because none of the deposed individuals "had any contact with Plaintiffs while they were present at Area 5 Detective Division." (R. 518, Defs.' Resp. at 22-23.) The Court finds that although the deposed individuals were not at the police station, the record reveals that they had knowledge of the events that led Plaintiffs to be taken to the station. Therefore, it was reasonable for Plaintiffs to order these transcripts. *See Cengr v. Fusibond Piping Sys.*, 135 F.3d 445, 455 (7th Cir. 1998) (citation omitted) (a deposition transcript is recoverable if it was "'reasonably necessary' to the case at the time it was taken, not whether it was used in a motion or in court"). As such, the transcript costs are recoverable. Some of the invoices submitted for court reporting, however, also include taxi cab and courier expenses. (*See* R. 485, Exs. to Pls.' Bill of Costs.) These

---

[4] *West Virginia University Hospitals v. Casey*, 499 U.S. 83 (1991), the case Defendants cite in support of their argument that expert fees are not recoverable under Section 1988, was legislatively overruled when Section 1988 was amended "to provide that a court, in its discretion, may include expert fees as a part of the attorney's fee award." *Ziegler Coal Co. v. Dir., Office of Workers' Comp. Programs*, 326 F.3d 894, 900 n.2 (7th Cir. 2003).

7

additional $158.98 in expenses are not recoverable under the statute. *See* 28 U.S.C. § 1920. Accordingly, Plaintiffs' requested $23,002.69 in transcript fees will be reduced to $22,843.71.

### 3. Other Costs

Finally, Defendants argue that other miscellaneous costs which Plaintiffs seek are non-recoverable. (R. 518, Defs.' Resp. at 23-24.) First, Defendants challenge some of Plaintiffs' transportation costs. (*Id.*) Plaintiffs contend that the named Plaintiffs are entitled to reimbursement for transportation to and from their homes, claiming "these costs were necessary to litigate Plaintiffs' claims." (R. 532, Pls.' Reply at 17.) The Court, however, is not aware of authority (and Plaintiffs do not provide any) that authorizes recovery of costs for transportation expenses incurred by a party to a lawsuit. As such, the requested $135.14 in Plaintiffs' transportation costs are not recoverable. In addition, Plaintiffs provide no authority for the $80.00 invoice from Elliott Slosser ("Slosser").[5] (*See* R. 485, Exs. to Pls.' Bill of Costs.) Therefore, this invoice is not recoverable. Finally, Plaintiffs agree to retract $38.24 in costs for deliveries, acknowledging "these costs were not necessary to the litigation of Plaintiffs' claims." (R. 532, Pls.' Reply at 17 n.11.) As such, the Court will reduce Plaintiffs' "Other Costs" from $3,321.51 to $3,068.13

In sum, Plaintiffs' Bill of Costs is granted in part and denied in part. Plaintiffs are awarded $35,121.32 of the requested $36,480.25 in costs.

## II. Attorneys' Fees

---

[5] Plaintiffs contend that Slosser's fee was related to attempts to locate witness John Redd. (*See* R. 532, Pls.' Reply at 17.)

8

Plaintiffs seek to recover $650,417.50 in attorneys' fees. (R. 488, Ex.1, Rule 54.3 Statement at 1.) In addition, Plaintiffs filed a motion to enhance the lodestar. (R. 501, Pls.' Mot.) In their motion, Plaintiffs argue that the Court should "equalize Plaintiffs' counsel's attorneys' fees with the $1,030,000 paid by the City [] to its own outside counsel in this same case." (*Id.* at 2.) Defendants argue that this case does not warrant an enhancement, but instead Plaintiffs' attorneys' fees should be reduced. (R. 518, Defs.' Resp. at 2-16.) Defendants contend that the Court should more appropriately award Plaintiffs $430,365.00 in attorneys' fees. (R. 488, Ex.1, Rule 54.3 Statement at 2.)

### A. Plaintiffs' Motion to Enhance the Lodestar

Plaintiffs' argue that pursuant to *Perdue v. Kenny A.*, No. 08-970, - - U.S. - - , 2010 U.S. LEXIS 3481 (Apr. 21, 2010), an upward departure in the lodestar is justified. (R. 501, Pls.' Mot. at 2.) A judge does not have "unlimited" discretion to award attorney's fees and "[i]t is essential that the judge provide a reasonably specific explanation for all aspects of a fee determination, including any award of enhancement." *Perdue*, 2010 U.S. LEXIS 3481 at *28. In *Perdue*, the Supreme Court held that when calculating an award under Section 1988, "there is a 'strong presumption' that the lodestar figure is reasonable, but that presumption may be overcome in those rare circumstances in which the lodestar does not adequately take into account a factor that may be properly considered in determining a reasonable fee." *Id.* at *20.

Plaintiffs argue that the litigation at hand qualifies as an "exceptional case" warranting the lodestar enhancement. (R. 501, Pls.' Mot. at 2.) In support of the requested enhancement, Plaintiffs point to the following: (1) the amount of the verdict; (2) counsel's efficiency; (3) Plaintiffs' acceptance of the Court's previous settlement recommendations that were rejected by

9

Defendants; (4) the named Plaintiffs were "not particularly sympathetic"[6]; and (5) the "exemplary skill, persistence and legal creativity" of counsel. (*Id.* at 2-3.) These factors, however, do not support the "exceptional" characterization, as they are already subsumed in the lodestar calculation. *See Purdue* at *18-19 (citations omitted) ("an attorney's performance" and the "novelty and complexity of a case" are presumably reflected in the attorney's billable hours and "may not be used as a ground for an enhancement" ). Moreover, enhancements should not be awarded without "specific evidence that the lodestar fee would not have been 'adequate to attract competent counsel.'" *Id.* at *21 (citation omitted). Plaintiffs' mere assertion that the lodestar should be upwardly adjusted because "defense counsel billed and was paid $1,030,000 by the City" does not satisfy this requirement. Accordingly, Plaintiffs' motion to enhance the lodestar is denied.

### B. Defendants' Arguments for Fee Reduction

Next, Defendants make several arguments in favor of reducing Plaintiffs' attorneys' fees. (R. 518, Defs.' Resp. at 2-15.)

#### 1. Fee Cap

Defendants first argue, without any case support, that Plaintiffs' fees should be capped at $220,000, "the number they represented was their best guesstimate of their actual fees incurred as of September 15, 2008." (*Id.* at 2-3.) The Court is not persuaded by this argument. While Plaintiffs agreed to "cap their demand for attorney's fees at $150,000," this agreement was in the

---

[6] Plaintiffs explain that the named Plaintiffs had "poor work histories" and "were different culturally from the jury pool." (*Id.* at 3.)

context of a September 2008 settlement conference.[7] (R. 518-1, Defs.' Resp., Ex. B.) The case, however, did not settle in September 2008, but instead went to trial a year later in July 2009. The Court will not now penalize Plaintiffs for attempting to reach settlement by capping their attorneys' fees based on this earlier "guesstimate." Defendants' motion to reduce Plaintiffs' Fee Petition on this basis is therefore rejected.

### 2. Prevailing Parties

Next, Defendants argue that because Plaintiffs were only a "prevailing party" on the unlawful detention claim, attorneys' fees related to the other "distinctly different" claims are not recoverable. (R. 518, Defs.' Resp. at 3.) To support their argument, Plaintiffs rely primarily on the Supreme Court's decision in *Hensley*. (*Id.* at 10.)

*Hensley* concerned a class of plaintiffs involuntarily confined in a forensic unit of a state hospital. 461 U.S. at 426. Their suit challenged the constitutionality of treatment and conditions at the hospital. *Id.* The class did not succeed on all of the claims it pursued, but the trial court refused to eliminate from the attorney's fee award hours spent on unsuccessful claims and granted the fee request pursuant to Section 1988. *Id.* at 428-29. The Supreme Court vacated the judgment of the court of appeals and remanded for further proceedings consistent with its holding that "the extent of a plaintiff's success is a crucial factor in determining the proper amount of an award of attorney's fees under [Section 1988]." *Id.* at 440. The Court explained:

> Where the plaintiff has failed to prevail on a claim that is distinct in all respects from his successful claims, the hours spent on the unsuccessful claim should be excluded in

---

[7] Upon Defendants' insistence that Magistrate Judge Cole's order required Plaintiffs to provide "actual attorneys' fees" (*see id.* at Ex. C), Plaintiffs indicated that it was "too difficult" to provide actual numbers but stated that their "best estimate" of fees for the case as of September 10, 2008, was "between $210,000.00 and $220,000.00." (*Id.* at Ex. D.)

11

> considering the amount of a reasonable fee. Where a lawsuit consists of related claims, a plaintiff who has won substantial relief should not have his attorney's fee reduced simply because the district court did not adopt each contention raised. But where the plaintiff achieved only limited success, the district court should award only the amount of fees that is reasonable in relation to the results obtained.

*Id.; see also Jackson v. Ill. Prisoner Review Bd.*, 856 F.2d 890, 894 (7th Cir. 1988) ("Time spent on claims for relief that are unsuccessful and unrelated to the ultimate result achieved are not compensable.")

*Hensley* acknowledged that "cases involving such unrelated claims are unlikely to arise with great frequency," and that in many civil rights cases "plaintiff's claims for relief involve a common core of facts or will be based on related legal theories." 461 U.S. at 435. In a case with related claims, "[m]uch of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis." *Id.* The Supreme Court cautioned that "[s]uch a lawsuit cannot be viewed as a series of discrete claims." *Id.*

Defendants argue that in this case the claims are unrelated because "[t]he forms of misconduct are independent conceptually as well as in time." (*See* R. 518, Defs.' Resp. at 6.) The Seventh Circuit has held that "[s]equential claims - - claims that are causally related . . . but do not depend on the same facts - - are not related for purposes of *Hensley*." *Lenard v. Argento*, 808 F.2d 1242, 1246 (7th Cir. 1987); *see also id.* at 1246-47 ("A plaintiff should not be rewarded for a failed attempt to base liability on conduct that did not result in an actionable wrong to him, even if the conduct closely precedes, or follows close on the heels of conduct that was wrongful."). Here, Defendants claim that "the only relationship between the shooting and

detention claim is that they formed a sequence."[8] (*Id.* at 7.) As such, Defendants argue that the claims related to the shooting are "distinctly different" from the unlawful detention claim upon which Plaintiffs prevailed. (*Id.* at 6.)

The Court finds that Plaintiffs' claims were not "distinctly different." Rather, the events related to the shooting provided the appropriate context for Plaintiffs' unlawful detention claim. When questioned, Plaintiffs told a story that was different from the police officers' version of the shooting events. The details surrounding the events of the shooting provided a theory as to why Plaintiffs were held at the station. As such, the shooting events and corresponding claims were not "unrelated." *See Hensley*, 461 U.S. at 440 (a claim is unrelated if it is "distinct in all respects from [plaintiff's] successful claims.") Accordingly, even though Defendants' prevailed on the shooting related claims, the events surrounding the shooting were interrelated and essential to Plaintiffs' unlawful detention claim. *See Jaffee v. Redmond*, 142 F.3d 409, 413 (7th Cir. 1998) ("*Hensley* makes clear that when claims are interrelated, as is often the case in civil rights litigation, time spent on successful claims may be compensable if it also contributed to the success of other claims."). Therefore, the Court will not categorically exclude time spent on the shooting related events. Defendants' argument to reduce Plaintiffs' fees because both parties prevailed on claims is rejected.

---

[8] Defendants describe the "sequence" as follows: Plaintiffs were in the vestibule at the time of the shooting which formed the basis of the excessive force, intentional infliction of emotional distress and intrusion claims; after the shooting the responding officers searched the Warfield residence and certain Plaintiffs, forming the basis of the unlawful search claims; after the searches, Plaintiffs were transported to and held at the police station, the basis of the detention claim. (*Id.* at 7.)

13

### 3. Reasonableness Objections

Next, Defendants make several objections to the reasonableness of the hours in Plaintiffs' fee petition. (*See* R. 518, Defs.' Resp. at 10-13.) The party submitting the fee petition has "the burden of justifying the fees requested." *Spellan v. Bd. of Ed. for Dist. 111*, 59 F.3d 642, 646 (7th Cir. 1995). The Supreme Court has directed that "[c]ounsel for the prevailing party should make a good-faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary, just as a lawyer in private practice ethically is obligated to exclude such hours from his fee submission." *Hensley*, 461 U.S. at 444. Accordingly, a district court should exclude from the fee calculation "hours that were not 'reasonably expended.'" *Id.* (citation omitted).

Defendants first claim that Plaintiffs should not be entitled to fees for hours billed for the trial by Michaele N. Turnage Young ("Young"). (R. 518, Defs.' Resp. at 11.) Defendants argue Young's trial fees are not compensable because the time records reveal that "Young's contribution to the trial was virtually nonexistent." (*Id.* at 11-13.) A review of Young's time entries reveals that she was added to Plaintiffs' trial team on the first day of trial. (*See* R. 488, Pls.' Fee Pet. Exs., Ex. 2.) Further, while Plaintiffs' other trial attorneys' Russell Ainsworth ("Ainsworth") and Tara Thompson ("Thompson") have entries that reflect typical trial tasks, Young's entries simply reflect hours billed for "trial" or unidentified "witness prep." (*Id.*) While gaining experience by observing the trial was undoubtedly beneficial to Young and Plaintiffs' counsel, Plaintiffs have not shown that these hours were "reasonably expended." Therefore, Young's hours billed for the trial are not compensable. *See Hensley*, 461 U.S. at 444

("unnecessary" hours should be excluded from a fee request). As such, the Court will deduct 93.5 hours of Young's billed hours for the trial from Plaintiffs' fee petition.[9]

The Court will also deduct 9 hours of time spent "waiting for the verdict" from Thompson's billed hours as these hours were not "reasonably expended."[10] (*See* R. 488, Pls.' Fee Pet. Exs., Ex. 2.)

### 4. Excessive Rates

Finally, Defendants argue that "Plaintiffs' counsel's hourly rates are excessive." (R. 518, Defs.' Resp. at 13-15.) A reasonable hourly rate for attorneys' fees under Section 1988 is calculated according to the "prevailing market rates in the relevant community." *Wis. v. Hotline Indus.*, 236 F.3d 363, 366 (7th Cir. 2000) (citing *Blum v. Stenson*, 465 F.3d 886, 895 (1984)). The rate at which an attorney actually bills paying clients for similar work is "presumptively appropriate" for calculating the market rate. *Denius v. Dunlap*, 330 F.3d 919, 930 (7th Cir. 2003) (citation omitted). "The burden of proving the 'market rate' is on the fee applicant, however, once the attorney provides evidence establishing his market rate, the burden shifts to the defendant to demonstrate why a lower rate should be awarded." *Spegon v. Catholic Bishop of Chi.*, 175 F.3d 544, 554-55 (7th Cir. 1999).

---

[9] Although Young's July 14, 2009 time entry includes compensable time spent drafting a stipulation regarding Moseley's testimony, there is no indication how many hours were spent on this reasonable task. (*See* R. 518-2, Ex. H, Young's Hours.) Therefore, the entry is not compensable. *See Lopez v. City of Chi.*, No. 01 C 1823, 2007 U.S. Dist. LEXIS 85708, at *14 n.1 (N.D. Ill. Nov. 20, 2007) (where entries describe both reasonable and unreasonable activities "but fail to specify how much time was spent on each task," the entries "must be stricken in their entirety").

[10] Again, although Thompson's time entries include both reasonable and unreasonable activities they are "stricken in their entirety." *Lopez*, 2007 U.S. Dist. LEXIS 85708, at *14.

In this case, Plaintiffs have submitted billing records, affidavits, articles, and the Laffey Matrix[11] in support of their fee petition. (See R. 486, Ex. A. Pls.' Fee Pet. at 14-24; R. 488-494, Pls.' Fee Petition Exs.) Based on this evidence, the Court finds that Plaintiffs have met their burden of establishing that their rates are in accordance with their experience levels and the reasonable market rates of the area. See Spegon, 175 F.3d at 556 (the "attorney's own affidavits," "evidence of fee awards that the attorney has received in similar cases" and affidavits from "similarly experienced attorneys attesting to the rates" sufficiently satisfy the fee applicant's burden). The Court finds that Defendants' general assertion that the rates should be reduced due to "the effects of the recession on the legal community" does not warrant a lower award. (See R. 518, Defs.' Resp. at 13-15.) Accordingly, Plaintiffs' rates are approved.

In sum, after Young's and Thompson's billable hour reductions, Plaintiffs have a total of 1,818.75 in compensable hours. The Court therefore awards attorneys' fees in the amount of $624,387.50

## CONCLUSION

For the reasons set forth above, Defendants' Bill of Costs (R. 484) and Plaintiffs' Motion to Enhance the Lodestar (R. 501) are DENIED. Plaintiffs' Bill of Costs (R. 485) and Plaintiffs' Fee Petition (R. 486, Ex. A) are GRANTED in part, and DENIED in part. Plaintiffs are awarded $35,121.32 in costs and $624,387.50 in attorneys' fees.

---

[11] The Laffey Matrix is a table of hourly rates for attorneys and paralegals in the Washington, D.C. area prepared by the Civil Division of the United States Attorney's Office in the District of Columbia. See http://www.justice.gov/usao/dc/Divisions/Civil_Division. Although the Seventh Circuit has not explicitly addressed the utility of the Laffey Matrix, courts in this district have considered it as a factor in determining the reasonableness of hourly rates sought. See Handott v. City of Chi., No. 07 C 6754, 2010 U.S. Dist. LEXIS 35548, at *22-23 (N.D. Ill. Apr. 12, 2010) (citing cases).

Date: August 17, 2010          ENTERED: _____
                                        **Ruben Castillo**
                                        **United States District Judge**